612 P.2d 1328
**STATE of New Mexico,
Plaintiff-Appellant,**

v.

**Ralph QUIROZ, aka, Juan Rafael Carrasco Quiroz, Defendant-Appellee.**

**No. 4464.**

Court of Appeals of New Mexico.

March 6, 1980.

Writ of Certiorari Quashed June 16, 1980.

Jeff Bingaman, Atty. Gen., Santa Fe, Ronald R. Walker, Asst. Dist. Atty., Roswell, for plaintiff-appellant.

John B. Bigelow, Chief Public Defender, Melanie S. Kenton, Asst. App. Defender, Santa Fe, for defendant-appellee.

## OPINION

HENDLEY, Judge.

On January 19, 1977, the grand jury of Chaves County returned an indictment against the defendant charging trafficking in a controlled substance—heroin. Prior to the return of that indictment, defendant was convicted of an unrelated federal offense and was incarcerated in the Federal Correctional Center at La Tuna, Texas.

Subsequently, the State of New Mexico filed a detainer against the defendant. At no time did the defendant exercise his right to request final disposition as is provided for in Article 3(A) of the Agreement on Detainers, § 31–5–12, N.M.S.A.1978, which states in part:

> Article 3—Prisoner's Request for Final Disposition
>
> A. Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he has caused to be delivered to prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition . . . .

On March 15, 1979, the State of New Mexico filed a request for temporary custody pursuant to the Agreement on Detainers to have the defendant tried in Chaves County. After a hearing at the Federal Correctional facility at La Tuna, the federal authorities honored the request for temporary custody and the defendant arrived in Chaves County on June 19, 1979. On July 3, 1979, the federal authorities at La Tuna informed New Mexico authorities that the Bureau of Prisons would not want the defendant after September 24, 1979. On September 27, 1979, New Mexico set bail for the defendant at $5,000.00.

Trial was set for December 19, 1979, which date would have been timely under New Mexico's six-month rule (N.M.R. Crim. P. 37, N.M.S.A. 1978), but not within the time required by the Agreement on Detainers. On the day scheduled for trial defendant moved for dismissal of the indictment under N.M.R. Crim. P. 37 for the district courts in New Mexico, under Article 4(C) of the Agreement on Detainers and under his federal speedy trial right. Article 4(C) states in part:

> Article 4—Prosecutor's Request for Final Disposition
>
> \*   \*   \*   \*   \*   \*
>
> C. In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The motion to dismiss was granted. The State appeals and we reverse.

*Application of the Agreement on Detainers*

The defendant concedes that the provisions of the Agreement on Detainers do not specifically address the facts in this case. This case presents issues of first impression in New Mexico. Furthermore, we have found no case with identical facts in other jurisdictions. *Commonwealth v. Merlo*, 364 A.2d 391 (Pa.Super.1976) is the most similar

case uncovered by our research. In *Merlo* the defendant was in federal custody when a request for temporary custody was lodged and honored on August 28, 1974. Trials scheduled in Philadelphia for September were postponed and, because the defendant's federal sentence was due to expire in October, the Commonwealth of Pennsylvania decided to return the defendant to the federal authorities and proceed with trials after his release from federal custody.

The defendant was released from federal custody on October 24, 1974, and voluntarily returned to Philadelphia for trial. His claims that the indictments against him should be dismissed were denied at the trial court. The lower court concluded that because the defendant was released from federal custody before one hundred twenty days of his original arrival in the receiving state, the Agreement on Detainers was no longer applicable.

On appeal, however, the Superior Court agreed that once defendant was released from federal custody the Agreement on Detainers was no longer pertinent, but held that the violation occurred prior to defendant's release when defendant was returned to the federal correctional facility untried on the indictments after Philadelphia had obtained temporary custody under the Agreement on Detainers.

The holding in *Commonwealth v. Merlo, supra*, is simply a holding that the Agreement on Detainers requires the indictments in the receiving state be dismissed when the prisoner charged is returned untried to the sending state. *Accord, Hughes v. District Court in and for City, etc.*, 593 P.2d 702 (Colo.1979). Nevertheless, in *Merlo* we likewise find verbalization of the sound principle that when a sending state absolutely releases a prisoner within the one hundred twenty days of his arrival in the receiving state, provisions of the Agreement on Detainers cease to be pertinent.

We recognize that the remedial nature of the Agreement on Detainers required that it should be construed liberally

in favor of the detainee. *See Nelms v. State*, 532 S.W.2d 923 (Tenn.1976). However, the Agreement has as its objective the eradication of "uncertainties which obstruct programs of prisoner treatment and rehabilitation." Agreement on Detainers, Article 1; *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *Commonwealth v. Fisher*, 451 Pa. 102, 301 A.2d 605 (1973). But when a prisoner is discharged by a sending state, his treatment and rehabilitation in that state is ended and the purpose of the Agreement loses significance. Thus, a rule cannot be justified when the reason for that rule is no longer valid. *See Flores v. Flores*, 84 N.M. 601, 506 P.2d 345 (1973).

■ When the defendant in this case was discharged by the federal authorities before he was required to be tried under the terms of the Agreement on Detainers, defendant could no longer rely on those provisions. The policy considerations ceased to exist. After September 24, 1979, the State of New Mexico no longer had an obligation to return the defendant pursuant to the Agreement on Detainers. Thereafter, the defendant remained a bailable accused with all the procedural rights of an accused in this state.

### N.M.R. Crim. P. 37

Defendant next suggests that under the facts of this case, even if the Agreement on Detainers was not applicable, the State needed an extension under Rule 37, but did not do so. We disagree.

Since the 1978 amendment to Rule 37, the critical event is the date of arraignment for any defendant arrested out of state. Rule 37(b)(3). However, because the indictment in this case was returned in 1977, we have to view the rule as it existed at the date the indictment was filed. *State v. DeBaca*, 90 N.M. 806, 568 P.2d 1252 (Ct.App.1977).

First, defendant suggests that the filing of the indictment should be a critical date. In the facts of this case, we think not. Rule 37(b), as it existed in 1977, provided that the latter of the dates of indictment or arrest is the critical date. The arrest referred to means the arrest for the offense charged. *State v. Dominguez*, 91 N.M. 296, 573 P.2d 230 (Ct.App.1977).

When was defendant arrested on the New Mexico charge? Defendant urges that he was arrested on the New Mexico charge on the date when the New Mexico detainer was filed against him. He relies on *Commonwealth ex rel. Knowles v. Lester*, 321 A.2d 637 (Pa.1974) for the proposition that the lodging of the detainer against one in custody on another charge is an arrest. That case addressed itself to an arrest within the Uniform Criminal Extradition Act. It cannot be properly transposed to the Agreement on Detainers in which a significant difference between the filing of a detainer and a request for temporary custody is recognized. *United States v. Mauro, supra.*

■ In this case, as Rule 37 existed in 1977, defendant was arrested at the time temporary custody was awarded to the State of New Mexico by federal authorities. Since the trial was scheduled for December 19, 1979, we find no violation of the six-month rule.

### Constitutional Right to a Speedy Trial

Defendant finally urges that his right to a speedy trial guaranteed by the Sixth Amendment was violated. In this case we note that the defendant was in federal custody, that he did not exercise his right under the Agreement on Detainers to obtain a final disposition of the charge. We note also that there is no claim of actual prejudice—solely a claim of prejudice because of the lodging of the detainer. But the record before us suggests that the trial court ruled on a violation of the Agreement on Detainers and did not pass on defendant's speedy trial claim. For this reason, we remand this case with directions that the court consider defendant's speedy trial claim. *State v. Tafoya*, 91 N.M. 121, 570 P.2d 1148 (Ct.App.1977).

For the above reasons we reverse and remand this case solely for the purpose of the trial court's considering defendant's speedy trial claims. Should the trial court rule against defendant, the defendant shall

be tried on the January 19, 1977, indictment.

IT IS SO ORDERED.

LOPEZ and WALTERS, JJ., concur.