473 A.2d 1311

**STATE of Maryland**

v.

**David OXENDINE.**

No. 984, Sept. Term, 1983.

Court of Special Appeals of Maryland.

April 13, 1984.

Ann E. Singleton, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Warren B. Duckett, Jr., State's Atty., and Ronald Levitan, Asst. State's Atty., Anne Arundel County, on the brief, for appellant.

Martha Weisheit, Asst. Public Defender, with whom was Alan Murrell, Public Defender, on the brief, for appellee.

Submitted before GILBERT, C.J., and WILNER and GARRITY, JJ.

GILBERT, Chief Judge.

The question put to us in this appeal by the State is whether the Intrastate Detainers Act ("IDA" or the "act"), Md.Ann.Code art. 27, § 616S, is applicable to an accused who is released from custody after he invoked the provisions of that act but before a disposition of the matter.

From the record we learn that a criminal information was filed against David Oxendine by the state's attorney for Anne Arundel County on September 7, 1982. The information charged that Oxendine, while an inmate at the Brock Bridge Correctional Facility in Anne Arundel County, on June 5, 1982, possessed a controlled dangerous substance with the intent to distribute it. A detainer was placed against Oxendine on the 14th of October, 1982. Oxendine,

on December 3, 1982, filed a request for disposition of the charges pursuant to the IDA. The request was received by the state's attorney for Anne Arundel County on December 10, 1982, and, apparently, by the clerk of the court on the same day.[1] Thirty-four days later Oxendine completed his sentence. His initial appearance on the criminal information charging possession with intent to distribute a controlled dangerous substance was made before a district court commissioner on January 26, 1983. On March 11, 1983, the charges were dismissed in accordance with Md. District Rule 727 j for lack of prosecution. A dismissal under that rule is by its own terms "without prejudice."

Approximately six weeks later, on April 25, 1983, the grand jury for Anne Arundel County returned a two count indictment against Oxendine arising out of the same conduct that was the subject of the charges that had been dismissed by the district court.

Oxendine moved to dismiss the indictment on the grounds that there was a violation of the IDA and that the court was without jurisdiction to try the case.[2] The State conceded that trial was not commenced within 120 days of Oxendine's invocation of the IDA,[3] but argued that the IDA became inapplicable once Oxendine was released from prison on January 13, 1983. The hearing judge agreed with Oxendine's position and dismissed the indictment. We have an entirely different view.

The IDA provides, in pertinent part:

---

**1.** The record is unclear as to whether Oxendine's request was received by the circuit court where the charge was pending, or the district court where, pursuant to Md. District Rule 723, Oxendine's initial appearance occurred. The IDA requires that the state's attorney and the "appropriate court" receive a written request before the 120 day time limit begins to run. *See Bey v. State,* 36 Md.App. 529, 373 A.2d 1291 (1977). The State, however, does not contend that the appropriate court did not receive Oxendine's request on December 10, 1982, and, therefore, we will not consider the matter further.

**2.** Md.Ann.Code art. 27, § 616S (e).

**3.** Md.Ann.Code art. 27, § 616S (b).

"(b) Whenever the Division of Correction receives notice of an untried indictment, information, warrant, or complaint against a prisoner serving a sentence in a correctional institution under the jurisdiction of the Division of Correction, ... the prisoner shall be brought to trial within 120 days after he has delivered (1) to the State's attorney of the ... county in which the indictment, information, warrant, or complaint is pending and (2) to the appropriate court, his written request for a final disposition to be made of the indictment, information, warrant, or complaint .... [Md.Ann.Code art. 27, § 616S(b).]

. . . .

(e) If the untried indictment, information, warrant, or complaint for which request for disposition is made, is not brought to trial within the time limitation set forth in subsection (b) ... [quoted above], the court no longer has jurisdiction, and the untried indictment, information, warrant, or complaint has no further force or effect. In that case, the court upon request of the prisoner or his counsel shall enter an order dismissing the untried indictment without prejudice. [Md.Ann.Code art. 27, § 616S(e).]"

In construing legislative acts, we are bound by,

"[t]he cardinal rule of statutory construction ... [*i.e.*] to ascertain and effectuate the actual intent of the Legislature .... The primary source from which to determine this intent is the language of the statute itself. When statutory language is ambiguous, a court may consider a statute's legislative history and must consider its purpose...." *State v. Loscomb,* 291 Md. 424, 429, 435 A.2d 764, (1981). (Citations omitted).

The IDA does appear to be ambiguous. On its face, subsection (b) of the act seems to favor the stance assumed by Oxendine, inasmuch as it provides, apparently without qualification other than "[f]or good cause shown in open court," that, "the prisoner shall be brought to trial within 120 days after" he invokes the act. On the other hand,

subsection (e) ostensibly tilts in the direction of the State's position, since it provides that when the time limitation of subsection (b) is violated, "the court upon request of the *prisoner* or his counsel shall enter an order dismissing the untried indictment without prejudice." (Emphasis supplied.) Indubitably, Oxendine was a prisoner at the time he invoked the IDA. It is equally undisputed that he was not a prisoner when he filed his motion to dismiss the indictment.

The ambiguity caused by the roaky language may be clarified by a reading of the avowed legislative purpose as set out in the act itself.

"*Charges outstanding against a prisoner,* and detainers based upon untried indictments, informations, warrants, or complaints, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation, and cause a *prisoner serving a term under a detainer* to suffer serious disadvantages. Accordingly, *it is the policy of this State and the purpose of this section to encourage the expeditious and orderly disposition of these charges and determination of the proper status of any and all detainers based upon untried indictments, informations, warrants, or complaints.*" Md.Ann.Code art. 27, § 616S(a). (Emphasis supplied.)

The Court of Appeals in *State v. Barnes,* 273 Md. 195, 205–207, 328 A.2d 737 (1974), in speaking of the purpose behind the IDA, said:

"It has long been recognized that detainers for untried charges—whether interstate or intrastate in nature—may result in 'undue and oppressive incarceration.' Undue delay in the disposition of such detainers has been recognized as minimizing the possibility that a defendant incarcerated might receive a sentence at least partially concurrent with the term he is serving and that under the procedures widely practiced, the duration of his imprisonment may be increased and the conditions under which his confinement must be served greatly worsened because of the pendency of an additional charge against him and the

potentiality of additional punishment. Similarly, it has been recognized that a long delay in the trial of the detainer charge may impair the ability of the accused to defend himself since he is often in a prison far removed from the place where the added offense allegedly took place, resulting in an impairment of his ability to keep apprised of the whereabouts of witnesses, and isolates him from the ready availability of the assistance of his counsel. It has even been stated that the pendency of such a detainer constitutes a serious impediment to the prisoner's ability to take maximum advantage of the institutional opportunities for rehabilitation. *See Smith v. Hooey,* 393 U.S. 374, 378–80 [89 S.Ct. 575, 577–78, 21 L.Ed.2d 607] (1969). *See also Note,* 77 Yale L.J. 767, 769–71 (1968); Note, 18 Rutgers L.Rev. 828, 833–34 (1964). In some jurisdictions the pendency of such a detainer precludes the prisoner from eligibility for parole consideration; in others it excludes him from placement on work-release programs, and it has been known, because of the potentiality of escape, to cause the prisoner to be confined under more strict and harsh security measures than might otherwise be applicable to his case, except for the detainer on file.

In an effort to ameliorate such conditions, which were found to 'produce uncertainties which obstruct programs of prisoner treatment and rehabilitation' and in order 'to encourage the expeditious and orderly disposition of such charges,' the General Assembly, by Ch. 627 of the Acts of 1965, enacted the Interstate Agreement on Detainers Act (codified as Art. 27, §§ 616A–616R) and complementary thereto, at the same session, by Ch. 628, enacted our own version of an Intrastate Detainer Act (codified as Art. 27, § 616S).

The provisions of § 616S were obviously intended to be supplementary to the provisions of the interstate act and being component parts of the same general system they should be construed together to the extent possible. *See Domain v. Bosley,* 242 Md. 1, 7, 217 A.2d 555, 559 (1966);

*Height v. State,* 225 Md. 251, 257, 170 A.2d 212, 214 (1961); *State v. Petrushansky,* 183 Md. 67, 71, 36 A.2d 533, 535 (1944). This view is strengthened by the fact that both statutes were enacted on the same date. *See Commissioners of Prince George's County v. Commissioners of Laurel,* 51 Md. 457, 462 (1879). *See also United States v. One Bally Bounty In-Line Pinball Machine,* 261 F.Supp. 187, 191 (D.Md.1966)." (Footnotes omitted.)

We think that in light of the legislature's purpose in enacting the IDA, the circuit court's construction of the act was incorrect. When Oxendine was released from prison on January 13, 1983, well within 120 days of the time that he invoked the strictures of the act, the IDA ceased to apply to him. Following Oxendine's release from prison on January 13, 1983, neither an expeditious nor a dilatory disposition of the charges pending against him could affect his status as a prisoner.

When Oxendine was released from incarceration upon the expiration of his term, he stepped out from under the protective umbrella of the IDA and stood in the same position as any other accused. His right to a speedy trial was, of course, protected by the Federal Constitution and his *Hicks*[4] rights by Md.Rule 746.

Although Maryland does not appear to have heretofore decided this precise issue, two of our sister States have had similar questions arise with respect to the Interstate Detainer Act, and that act is complimentary to the IDA since both serve the same general purpose. *State v. Barnes, supra; Parks v. State,* 41 Md.App. 381, 397 A.2d 212 (1979), *aff'd* 287 Md. 11, 410 A.2d 597 (1980). In construing the Interstate Detainer Act, both North Carolina and New Mexico have adopted a rationale akin to that we have expressed herein. The Court of Appeals of North Carolina,

---

**4.** *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979).

in *State v. Dunlap*, 57 N.C.App. 175, 178, 290 S.E.2d 744, 745–46, said:

"[T]he purpose of the agreement on detainers is to obviate difficulties in securing speedy trials of persons incarcerated in other jurisdictions and to minimize the time during which there is an inherent danger that a prisoner may forego preferred treatment or rehabilitative benefits. A prisoner's release during the 180-day period essentially nullifies the stated purposes of the act by removing the difficulty of bringing the prisoner to trial while he is incarcerated in an out-of-state prison. Moreover, once he is released, the cloud of the detainer no longer has an adverse effect on the prisoner's status within the prison.

We hold that upon the release of defendant from prison in New York before the expiration of the 180-day period, the Interstate Agreement on Detainers no longer governed defendant's right to a speedy trial."

In *State v. Quiroz*, 94 N.M. 517, 612 P.2d 1328, 1330–1331 (N.M.App.1980), the court held:

"[I]n *[Commonwealth v.] Merlo*, ... [242 Pa.Super. 517, 364 A.2d 391 (1976)] we likewise find verbalization of the sound principle that when a sending state absolutely releases a prisoner within the one hundred twenty days of his arrival in the receiving state, provisions of the Agreement on Detainers cease to be pertinent.

We recognize that the remedial nature of the Agreement on Detainers required that it should be construed liberally in favor of the detainee.... However, the Agreement has as its objective the eradication of 'uncertainties which obstruct programs of prisoner treatment and rehabilitation.' ... But when a prisoner is discharged by a sending state, his treatment and rehabilitation in that state is ended and the purpose of the Agreement loses significance. *Thus, a rule cannot be justified when the reason for that rule is no longer valid.*" (Footnotes omitted.) (Emphasis added.)

We hold that the Intrastate Detainers Act does not apply to a person who is released from prison within 120 days from the date he or she invokes the tenets of the act. Accordingly, we reverse the judgment of the circuit court and remand with instruction that the indictment be reinstated.

JUDGMENT REVERSED.

CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.