571 A.2d 996

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. LUIS E. RODRIGUEZ, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 27, 1990—Decided March 20, 1990.

456

Before Judges ANTELL, ASHBEY and STEIN.

*Thomas S. Smith, Jr.,* Acting Public Defender, attorney for appellant (*Steven M. Gilson,* designated counsel and on the brief).

*Richard C. Hare,* Warren County Prosecutor, attorney for respondent (*Frank J. Bucsi,* Senior Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

ANTELL, P.J.A.D.

Defendant was indicted on April 7, 1983, for unlawful possession of a weapon, *N.J.S.A.* 2C:39–5b, possession of a controlled dangerous substance, *N.J.S.A.* 24:21–20(a–1), and possession of hollow-nose bullets, *N.J.S.A.* 2C:39–3f. He failed to appear for his arraignment and on May 20, 1983, the court issued a bench warrant for his arrest.

On March 27, 1987, the Warren County Prosecutor's Office filed a detainer against defendant in the State of Florida where defendant was being held in a correctional institution. On July 16, 1987, defendant filed with the Warren County Prosecutor's Office his Notice of Place of Imprisonment and Request For Disposition of Indictment, in accordance with the Interstate Agreement on Detainers (Agreement), *N.J.S.A.* 2A:159A–3(b). Pursuant thereto, on October 19, 1987, defendant was transferred from the Florida correctional facility where he was serving a sentence to the Warren County jail to await trial on the New Jersey charges. He was arraigned November 6, 1987, and a trial date was fixed for January 25, 1988. By letter dated November 13, 1987, the prosecutor was advised by the Florida Department of Corrections that the sentence defendant had been serving there terminated November 12, 1987. After a number of interlocutory motions the court conducted a hearing on March 23 and 24, 1988, and defendant was found guilty by the court sitting without a jury. Defendant now appeals from an order dated January 8, 1988, which denied his motion to dismiss the indictment for failure to bring him to trial within the time limitations prescribed by the Interstate Agreement on Detainers.

The section of the Agreement implicated here is *N.J.S.A.* 2A:159A–3(a), which provides that one serving a term of imprisonment in a state party to the agreement (sending state) may request to be brought to trial on any untried charges of another party state (receiving state) on the basis of which a detainer has been lodged against the prisoner. That provision of the agree-

ment mandates that the prisoner be brought to trial on those charges within 180 days after delivery to the prosecutor in the receiving state of notice of the place of his imprisonment and the prisoner's request for a final disposition. The 180–day period here expired on January 12, 1988, and the case was tried well outside that time frame.

■ We conclude that upon termination of defendant's Florida sentence on November 12, 1987, the Agreement and its time prescriptions became inapplicable. The policy of the Agreement is clearly stated in *N.J.S.A.* 2A:159A–1. It provides as follows:

> The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.

In furtherance thereof *N.J.S.A.* 2A:159A–3(a) states:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and *whenever during the continuance of the term of imprisonment* there is pending in any other party State any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. [Emphasis supplied.]

Cases which have commented on the question leave no doubt that the provisions of the Agreement are for the benefit of persons serving a "term of imprisonment" and no longer apply after the term of imprisonment ends. *Carrion v. Pinto*, 79 *N.J.Super.* 13, 16, 190 *A.*2d 199 (App.Div.1963); *State v. Binn*, 196 *N.J.Super.* 102, 106–107, 481 *A.*2d 599 (Law Div.1984), aff'd as modified 208 *N.J.Super.* 443, 506 *A.*2d 67 (App.Div.1986), certif. den. 104 *N.J.* 471, 517 *A.*2d 452 (1986). The conclusion

we reach herein coincides with those reached in the courts of other jurisdictions party to the Agreement. *State v. Dunlap,* 57 *N.C.App.* 175, 290 *S.E.*2d 744, 745–746 (1982), review den. 306 *N.C.* 388, 294 *S.E.*2d 213 (1982), explained that the purpose of the Agreement is:

[T]o obviate difficulties in securing speedy trials of persons incarcerated in other jurisdictions and to minimize the time during which there is an inherent danger that a prisoner may forego preferred treatment or rehabilitative benefits. A prisoner's release during the 180–day period essentially nullifies the stated purposes of the act by removing the difficulty of bringing the prisoner to trial while he is incarcerated in an out-of-state prison. Moreover, once he is released, the cloud of the detainer no longer has an adverse effect on the prisoner's status within the prison.

*See also Pristavec v. State,* 496 *A.*2d 1036 (Del.1985); *State v. Oxendine,* 58 *Md.App.* 591, 473 *A.*2d 1311 (1984).

Defendant also complains that the court erred in denying his motion to suppress evidence which formed the basis of the charges against him. Defendant was arrested at approximately 4:45 a.m. February 28, 1983, while sleeping in a van parked in a rest area on Interstate 80. State Troopers investigating the vehicle on the possibility that it had been abandoned saw two "marijuana roaches" and a clear plastic vial containing yellow pills in plain view. Thereupon, they wakened defendant and his female companion and placed them under arrest. In the ensuing search of their persons and the vehicle the police discovered further quantities of controlled dangerous substances, weapons and ammunition. After defendant signed a "Police Consent to Search" form at the State Police barracks, additional weapons and ammunition were found in the van. Defendant's contention that the searches were illegal is clearly without merit. *R.* 2:11–3(e)(2); *see Coolidge v. New Hampshire,* 403 *U.S.* 443, 91 *S.Ct.* 2022, 29 *L.Ed.*2d 564 (1971), reh'g den. 404 *U.S.* 874, 92 *S.Ct.* 26, 30 *L.Ed.*2d 120 (1971); *State v. Bruzzese,* 94 *N.J.* 210, 236, 463 *A.*2d 320 (1983), *cert.* den. 465 *U.S.* 1030, 104 *S.Ct.* 1295, 79 *L.Ed.*2d 695 (1984); *State v. Martin,* 87 *N.J.* 561, 567, 436 *A.*2d 96 (1981); *State v. Patino,* 83 *N.J.* 1, 9, 414 *A.*2d 1327 (1980).

Affirmed.