571 A.2d 892

**STATE of Maryland**

v.

**Parren Augustus HOLLEY.**

**No. 1207, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

April 3, 1990.

Kreg Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellant.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and MOYLAN and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, J.

This case involves an appeal by the State from an order dismissing an indictment against Parren Augustus Holley on the ground that his trial was not commenced within 180 days after Holley filed a request for disposition of the charges pursuant to the Interstate Agreement on Detainers.[1] The question presented is whether the 180–day speedy trial provision of the Interstate Agreement on Detainers continues in effect after the defendant's term of imprisonment in another state ends.

We have not had the occasion to address this particular issue under the Interstate Agreement on Detainers (I.A.D.). We have, however, answered this question in the negative in construing the Intrastate Detainers Act.[2] Accordingly,

---

**1.** Codified at Md.Code Ann. Art. 27, §§ 616A–616R (1957, 1987 Repl. Vol.).

**2.** In *State v. Oxendine,* 58 Md.App. 591, 599, 473 A.2d 1311 (1984), we held that the Intrastate Detainers Act, codified at Md.Code Ann. Art.

we hold that the I.A.D. does not apply under the circumstances presented here. Our holding is further supported by the statute's purpose, its plain language and case law from our sister jurisdictions.

Before we explain, and for ease of reference, we note the chronology of events the State contends are essential for a determination of the issue presented.

November 30, 1984 Felony arrest warrant issued charging Holley with robbery with a deadly weapon.

December 7, 1984 Written detainer sent to the District of Columbia where Holley was incarcerated.

October 29, 1985 Prison officials in the District of Columbia sent a letter to the Prince George's County Sheriff's Department, advising Maryland authorities that the District of Columbia was returning the warrants issued for Holley's arrest because he had been transferred to the prison in Petersburg, Virginia, on August 30, 1985.

December 6, 1988 The Prince George's County Sheriff's Department requested the return of Holley's arrest warrant and other documents from the District of Columbia as it had learned that Holley was incarcerated at the penitentiary in Lewisburg, Pennsylvania.

December 6, 1988 The Prince George's County Sheriff's Department sent a letter to the penitentiary at Lewisburg, Pennsylvania, advising officials there that Holley had been charged with robbery with a deadly weapon and requesting that a detainer be lodged against Holley.

December 12, 1988 Officials from the penitentiary at Lewisburg, Pennsylvania, sent a detainer action letter to the Prince George's County Sheriff's Department advising it that a detainer had been filed against Holley with

27, § 616S (1957, 1987 Repl.Vol., 1989 Cum.Supp.), does not apply to a person who is released from prison within 120 days from the date she or he invokes the act.

regard to the robbery with a deadly weapon charge. The letter further advised that Holley's release date was tentatively scheduled for February 5, 1989.

December 20, 1988 Holley's request for a final disposition of the robbery with a deadly weapon charge, dated December 13, 1988, was filed pursuant to the I.A.D. and received in the State's Attorney's Office.

January 11, 1989 Officials at the penitentiary at Lewisburg sent the Prince George's County Sheriff's Department a letter advising the department that Holley would be made available to them. Prince George's County replied that it would assume custody of Holley.

February 3, 1989 The Prince George's County Sheriff's Department assumed custody of Holley—two days prior to his scheduled release date.

On February 28, 1989, an indictment (CT 890512X) was filed in the Circuit Court for Prince George's County charging Holley with one count of robbery with a deadly weapon and one count of use of a handgun in the commission of a felony. On August 7, 1989, Holley's attorney filed a motion to dismiss these charges, as well as other charges not relevant to the present appeal, alleging, *inter alia*, a violation of the 180–day speedy trial provision of the I.A.D. A hearing was held on August 8, 1989 and the motion's judge granted Holley's motion to dismiss, ruling that there was a violation of the I.A.D. From this ruling, the State appeals.

## INTERSTATE AGREEMENT ON DETAINERS

The I.A.D. provides cooperative procedures among the member states for the transfer of prisoners imprisoned in one state to the temporary custody of a second state where criminal charges are pending. *Beachem v. State*, 71 Md. App. 39, 43, 523 A.2d 1033, *cert. denied*, 310 Md. 490, 530 A.2d 272 (1987). Initially, officials of the "receiving" state

direct a detainer to prison officials in the "sending" state[3] which informs them that there are charges pending in another jurisdiction against one of their prisoners based on an untried indictment, information or complaint. *Beachem*, 71 Md.App. at 43, 523 A.2d 1033. The officials having custody of the prisoner must inform him or her of the contents of the detainer and of his or her right to request final disposition of the charges on which the detainer is based. § 616D(c).

The prisoner initiates final disposition of the charges by sending written notice to the official having custody of him or her and that official is required to forward the notice to the appropriate prosecuting official in the receiving state, § 616D(d), who must bring the prisoner to trial within 180 days from the date the request is received. § 616D(a). If the prosecuting official fails to try the prisoner within the 180 days prescribed, then the court having jurisdiction over the charges in the detainer shall enter an order dismissing the charges with prejudice. § 616F(c).

Appellee moved to dismiss the indictment on the grounds that the State failed to bring him to trial within 180 days of December 20, 1988 and the motion's judge granted his motion.

The State argues, however, that, once an individual completes his or her term of incarceration in the "sending" state and is turned over to the custody of the "receiving" state, the prisoner loses the benefit of the 180–day speedy trial provision under § 616D(a), regardless of whether the prisoner is delivered to the receiving state before or after the incarceration is completed. Thus, the State contends that the motions' judge erred in dismissing the indictment since appellee was released from prison in the sending state in February, well before the 180 days expired. Upon an

---

**3.** Section 616C characterizes the state where the prisoner is incarcerated as the sending state and the state where charges are pending against the prisoner as the receiving state.

examination of the I.A.D. and its purpose, we agree with the State. We explain.

The dispute in the instant case arises from the parties' interpretation of § 616D(a), which provides in pertinent part:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Appellee contends that § 616D(a) should be strictly interpreted. He submits that the language of the statute is unqualified in that whenever "a person has entered upon a term of imprisonment in a penal or correctional institution of a party state" and "during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner," the person must be brought to trial within 180 days after the prosecuting officer of the "receiving" state receives the person's request for a final disposition of the indictment, information or complaint. Under a strict interpretation, appellee contends, dismissal of his indictment was proper since he was brought to trial more than 180 days after the State's Attorney received his request for final disposition of the indictment.

In response, the State argues that the language of § 616D(a) contemplates that the benefits of the I.A.D. are to be enjoyed only by persons under a "term of imprisonment." Once a prisoner has been released from incarceration, the State contends, the I.A.D. ceases to apply.

The determination of whether the I.A.D. applies to the instant case is largely a question of statutory construction. In *Kaczorowski v. Mayor of Baltimore*, 309 Md. 505, 516, 525 A.2d 628 (1987), the Court of Appeals said that, when we pursue the context of statutory language,

"legislative purpose is critical, that purpose must be discerned in light of context, and that 'statutes are to be construed reasonably with reference to the purpose to be accomplished....' The purpose, in short, determined in light of the statute's context, is the key. And that purpose becomes the context within which we apply the plain-meaning rule." (Citations omitted.)

Under the subject statutory scheme, the legislative purpose is set out in the Act itself.[4] In *State v. Oxendine*, 58 Md.App. 591, 598, 473 A.2d 1311 (1984), quoting *State v. Dunlap*, 57 N.C.App. 175, 290 S.E.2d 744, 745, *cert. denied*, 306 N.C. 388, 294 S.E.2d 213 (1982),[5] this Court said:

---

4. Section 616B in its entirety provides:
   "The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures."

5. Appellee contends that the presence of § 616D(f) in the I.A.D. renders *Oxendine* inapplicable to the instant case. Section 616D(f) provides that a prisoner's escape from custody after his or her request for final disposition shall void the request. Appellee posits that the

" '[T]he purpose of the agreement on detainers is to obviate difficulties in securing speedy trials of persons incarcerated in other jurisdictions and to minimize the time during which there is an inherent danger that a prisoner may forego preferred treatment or rehabilitative benefits.' "

The pendency of a detainer may preclude the prisoner from eligibility for parole consideration, exclude the prisoner from work release programs, or, because of the potentiality of escape, cause confinement under stricter security measures than might otherwise be applicable to the prisoner. *State v. Barnes*, 273 Md. 195, 206, 328 A.2d 737 (1974). The I.A.D.'s objective was to eradicate these detriments which obstruct programs of prisoner treatment and rehabilitation. But, once a prisoner is released from incarceration, his or her treatment and rehabilitation in the "sending" state ends and the purpose of the I.A.D. loses significance. Hence, the I.A.D. cannot be justified when the reason for it

---

inclusion of § 616D(f) in the I.A.D., coupled with the absence of a similar provision in the Intrastate Detainers Act, demonstrates a legislative intent that the I.A.D. is applicable to the circumstances in the instant case. Hence, he argues, *Oxendine* is only correct insofar as it applies to the Intrastate Detainers Act. We find this position tenuous, at best.

Section 616S of the Intrastate Detainers Act was "obviously intended to be supplementary to the provisions of the interstate act and being component parts of the same general system they should be construed together to the extent possible." *Oxendine*, 58 Md.App. at 596, 473 A.2d 1311, quoting *State v. Barnes*, 273 Md. 195, 207, 328 A.2d 737 (1974).

"Each statutory scheme creates a sort of 'statute of limitations' to be applied to detainers, whether they be interstate or intrastate, to the end that valid charges based thereon will be promptly ripened into trials and those detainers having no justiciable merit will be dismissed. Relating as they both do to the same general subject matter and directed at attaining the same basic results, the provisions pertaining to both interstate and intrastate detainers are in *pari materia* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope."

*Barnes*, 273 Md. at 208, 328 A.2d 737 (citations omitted). Hence, we find the holding and analysis in *Oxendine* equally applicable to the instant case.

is no longer valid. *Oxendine,* 58 Md.App. at 598, 473 A.2d 1311, quoting *State v. Quiroz,* 94 N.M. 517, 612 P.2d 1328, 1331 (Ct.App.1980). When appellee was released from prison upon the expiration of his term, "he stepped out from under the protective umbrella" of the I.A.D. and "stood in the same position as any other accused." *Oxendine,* 58 Md.App. at 597, 473 A.2d 1311. Accordingly, we hold that, in light of the purpose of the I.A.D., the motions' judge improperly dismissed the indictment.

Moreover, the plain language of the I.A.D. reveals that the party states did not contemplate covering prisoners discharged from incarceration within the statutory scheme. For example, § 616F(e) provides that "[a]t the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state." Subsection (h) of § 616F further states that the "receiving" state shall be responsible for the prisoner from the time that it receives custody of a prisoner "until such prisoner is returned to the territory and custody of the sending state...." Another indication appears in § 616D(d) which provides that "[i]f trial is not had ... prior to the return of the prisoner to the original place of imprisonment," the court shall dismiss the indictment.

Thus, it is clear that the Legislature did not contemplate that a prisoner released from incarceration was to receive the benefits of the I.A.D. The I.A.D. provides for the delivery of a prisoner to a receiving state, the time frame within which the prisoner must stand trial, and the procedure in which the receiving state is to return the prisoner to the sending state to complete the prison term. *State v. Thompson,* 19 Ohio App.3d 261, 483 N.E.2d 1207, 1210 (1984). Accordingly, we hold that the I.A.D. does not apply to a prisoner whose term of imprisonment in a sister state ends prior to the expiration of 180 days after the State's Attorney receives a request for final disposition of the pending indictment, information or complaint from the pris-

oner.[6]

Appellee urges us to find that the indictment was nevertheless properly dismissed because his right to a speedy trial and due process of law under the Sixth and Fourteenth Amendments to the United States Constitution and Articles 21 and 24 of the Maryland Declaration of Rights were violated. Our review of the record discloses that the motions' judge ruled on motions to dismiss in four cases. The motions' judge dismissed CT 890512X, the subject indictment, on the basis of a violation of the I.A.D. In the remaining cases, the court ruled that the I.A.D. did not apply, that the pre-indictment delay did not amount to a due process violation and that appellee was not denied his constitutional right to a speedy trial. In the subject motion to dismiss, the court only ruled on a violation of the I.A.D. and did not consider appellee's due process and speedy trial claims. In fact, the motions' judge specifically stated that his decision "is not going to turn on speedy trial." Since a factual determination by the motions' judge with respect to the speedy trial and pre-indictment delay issues relating to the subject indictment was specifically omitted, we reverse but remand for further consideration.

---

**6.** The cases we reviewed from our sister jurisdictions which have construed the speedy trial provision of the I.A.D. support our holding that the individual must be serving a term of imprisonment that still continues in the "sending" state at the time dismissal of the charges is sought in the "receiving" state. *See State v. Chapman,* 20 Conn.App. 205, 565 A.2d 259, 260 (1989); *Pristavec v. State,* 496 A.2d 1036, 1039 (Del.1985); *State v. Butler,* 496 So.2d 916, 917 (Fla.Dist.Ct.App.1986); *State v. Julian,* 244 Kan. 101, 765 P.2d 1104, 1106 (1988) (construing Uniform Mandatory Disposition of Detainers Act); *State v. Bellino,* 557 A.2d 963, 964 (Me.1989); *State ex rel. Haynes v. Bellamy,* 747 S.W.2d 189, 190–91 (Mo.App.1988) (construing Uniform Mandatory Disposition of Detainers Act); *State v. Tarango,* 105 N.M. 592, 734 P.2d 1275, 1278, *cert denied,* 105 N.M. 521, 734 P.2d 761 (Ct.App.1987); *State v. Quiroz,* 94 N.M. 517, 612 P.2d 1328, 1331 (Ct.App.1980); *State v. Dunlap,* 57 N.C.App. 175, 290 S.E.2d 744, 746, *cert. denied,* 306 N.C. 388, 294 S.E.2d 213 (1982); *State v. Thompson,* 19 Ohio App.3d 261, 483 N.E.2d 1207, 1210 (1984); *State v. Smith,* 353 N.W.2d 338, 341 (S.D.1984). *See also* Annotation, *Validity, Construction, and Application of Interstate Agreement on Detainers,* 98 A.L.R.3d 160 (1980, 1989 Cum.Supp.).

JUDGMENT REVERSED.

CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.