**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**David Lee DESTEPHANO, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 9, 2013.
Filed March 7, 2014.

---

Jacob M. Jividen, Camp Hill, for appellant.

Christin J. Mehrtens–Carlin, Assistant District Attorney, Carlisle, for Commonwealth, appellee.

BEFORE: ALLEN, J., LAZARUS, J., and FITZGERALD, J.*

OPINION BY LAZARUS, J.

David Lee Destephano appeals from the order of the Court of Common Pleas of Cumberland County dismissing his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546. Upon review, we affirm.

The salient facts of this matter are largely procedural and have been stipulated to by the parties. The trial court has forth those facts as follows:

> On or about March 10, 2011, [Destephano] was charged with two counts of Theft by Unlawful Taking and two counts of Criminal Conspiracy. There-

* Former Justice specially assigned to the Superior Court.

after, [Destephano] was incarcerated on unrelated charges in North Carolina. While incarcerated in North Carolina, [Destephano] filed a written notice ... on June 27, 2011, of his place of imprisonment and a request that final disposition be made on his untried [out-of-state] indictments pursuant to the Interstate Agreement on Detainers Act, 42 Pa.C.S.A. § 9101(III) (hereinafter "IAD").

Sometime between August 12, 2011 and August 30, 2011, the Cumberland County District Attorney's Office received notice of [Destephano's] request under the IAD.... The Cumberland County District Attorney's Office then executed an acceptance of temporary custody form pursuant to the IAD on August 30, 2011. [Destefano] physically arrived in Pennsylvania on September 16, 2011, and was held in Dauphin County[, where criminal charges against him were also pending]. Bail was set ... on November 2, 2011. [Destefano] was released from his North Carolina sentence on November 29, 2011, while still in Pennsylvania awaiting disposition of the March 10, 2011 [Cumberland County] charges.

[Destephano] filed a Waiver of Jury Trial on March 6, 2012, and waived Rule 600 for the period affected by the Waiver. Thereafter, [Destephano] filed a Motion to Withdraw Waiver of Jury Trial. On April 26, 2012, [Destephano's] motion was granted and a trial date was set for June 25, 2012. [Destephano] expressly waived any Rule 600 issues for the time affected by the Motion to Withdraw[.] On June 26, 2012, [Destephano] requested a continuance, and trial was continued until August 20, 2012.

On August 21, 2012, after reviewing his rights, [Destephano] pled guilty to one count of Theft by Unlawful Taking [ (F3).] [Destephano] was sentenced that same day to pay the costs of prosecution and to a term of imprisonment of nine months to twenty-four months, to run concurrent with any other sentence [he] was serving at the time.

PCRA Court Opinion, 8/1/13, 1–3.

Destephano filed a *pro se* PCRA petition on December 20, 2012. The PCRA court appointed counsel, who filed an amended petition on February 4, 2013. The parties filed a stipulation of facts on March 25, 2013 and, after consideration of the parties' memoranda of law, the PCRA court denied relief by order dated June 4, 2013. Destephano filed a timely notice of appeal on June 11, 2013 and a court-ordered statement of errors complained of on appeal on June 14, 2013.

On appeal, Destephano raises the following issues for our review:

1. Whether the PCRA court erred in denying [Destephano] relief based upon [his] claim that his conviction and sentence resulted from a proceeding in a tribunal without jurisdiction pursuant to 42 Pa.C.S.A. 9543(a)(2)(vii)?

2. Whether the PCRA court erred in denying [Destephano] relief based upon [his] claim that trial counsel was ineffective by failing to seek dismissal of [Destephano's] charges based upon the Commonwealth's failure to bring [Destephano] to trial pursuant to the timeliness requirements of Articles III and IV of the IAD?′

Brief of Appellant, at 4.

■ We begin by noting that, because the facts in this matter are not in dispute, our review is limited to the PCRA court's legal conclusions.[1] In doing so, our stan-

---

1. Destephano claims eligibility for PCRA relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(ii) & (viii) (ineffective assistance of counsel and proceeding in tribunal without jurisdiction).

dard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Rykard,* 55 A.3d 1177, 1183 (Pa.Super.2012).

■ Although stated as two separate claims, the gist of Destephano's issues on appeal is that his conviction and sentence are invalid because they were imposed in violation of the timeliness requirements of the IAD. Specifically, Destephano argues that the Cumberland County District Attorney received notice of his request for disposition no later than August 30, 2011. As such, the Commonwealth had until February 27, 2012 at the latest to bring Destephano to trial in 180 days in accordance with 42 Pa.C.S.A. § 9101(III)(a). Moreover, Destephano asserts that, pursuant to 42 Pa.C.S.A. § 9101(IV)(c), he was required to be brought to trial within 120 days of November 2, 2011, the date bail was set, or by March 1, 2012. Destephano claims that time against him only began tolling on March 6, 2012, when he waived his right to a jury trial. He ultimately pled guilty to one count of theft by unlawful taking on August 21, 2012, and was sentenced that same day.

In its exceptionally thorough Rule 1925(a) opinion, the trial court concluded that the speedy trial time limits set forth in Articles III and IV of the IAD no longer applied to Destephano once he was released from his North Carolina sentence while still awaiting disposition of his Pennsylvania charges. As such, the Cumberland County Court of Common Pleas had jurisdiction to accept Destephano's guilty plea, and counsel was not ineffective for failing to request dismissal pursuant to the IAD. Upon review, we concur.

■ The IAD is a compact among 48 states, the District of Columbia and the United States. *Cuyler v. Adams,* 449 U.S. 433, 436 n. 1, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). The IAD establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against them. *Commonwealth v. Williams,* 586 Pa. 553, 896 A.2d 523, 536 n. 5 (2006). "The policy of the [IAD] is to encourage the expeditious and orderly disposition of charges and its purpose is to promote and foster prisoner treatment and rehabilitation programs by eliminating uncertainties which accompany the filing of detainers." *Commonwealth v. Merlo,* 242 Pa.Super. 517, 364 A.2d 391, 394 (1976) (citations, quotation marks and italics omitted).

> Those whose problems are addressed in the Agreement are prisoners with outstanding criminal charges from another jurisdiction. The purpose of the [timeliness] provision[s] ... is to minimize the adverse impact of a foreign prosecution on rehabilitative programs of the confining jurisdiction. When a prisoner is needlessly shuttled between two jurisdictions, then any meaningful participation in an ongoing treatment program is effectively foreclosed for two reasons. First, participation requires physical presence and the continuous physical presence of a prisoner is not possible when multiple trips to a foreign jurisdiction are made. Secondly, the psychological strain resulting from uncertainty about any future sentence decreases an inmate's desire to take advantage of institutional opportunities.

*Id.* quoting *United States ex rel. Esola v. Groomes,* 520 F.2d 830, 837 (3d Cir.1975) (footnote omitted). The IAD applies only to sentenced prisoners. *Commonwealth v. Williams,* 284 Pa.Super. 125, 425 A.2d 451, 455 (1981).

The IAD provides, in pertinent part, as follows:

Article III

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint[.]

. . .

Article IV

. . .

(c) In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state[.]

42 Pa.C.S.A. § 9101(III)(a) & (IV)(c). Any proceedings not brought to trial within the time limits set forth in Articles III or IV are required to be dismissed without prejudice. 42 Pa.C.S.A. § 9101(V)(c).

The question of whether the time limits of the IAD apply to an as-yet untried defendant being held in a receiving state once his sentence in the sending state has been discharged is one of first impression in this Commonwealth. As the facts underlying this case are not in dispute, our task is solely one of statutory interpretation. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). The plain language of a statute is generally the best indicator of the General Assembly's intent.

*Commonwealth v. Gehris,* 618 Pa. 104, 54 A.3d 862, 873 (2012).

■ Here, the IAD consistently refers to "prisoners" and those serving a "term of imprisonment." In particular, Article III explicitly applies "during the continuance of the term of imprisonment" in a party state. 42 Pa.C.S.A. § 9101(III)(a). Similarly, Article IV applies to anyone against whom a detainer has been lodged in a party state and "who is serving a term of imprisonment." 42 Pa.C.S.A. § 9101(IV)(a). As such, the statute clearly contemplates application only to individuals currently serving a term of imprisonment in the sending state. It follows that, once an individual has been discharged from his term of imprisonment in the sending state, the terms of the IAD no longer apply. Moreover, the stated purpose of the IAD, to minimize the impact of untried charges on the rehabilitative life of a prisoner, is no longer relevant once an individual is no longer serving a rehabilitative sentence.

In his brief, Destephano relies on two cases to support his claim. In *Commonwealth v. Merlo,* 242 Pa.Super. 517, 364 A.2d 391 (1976), the appellant was indicted in Philadelphia for passing a bad check. Subsequently, Merlo was found to be in violation of his federal probation and was committed to federal custody in Danbury, Connecticut for a period of six months. While Merlo was in federal custody, the Commonwealth lodged detainers against him and requested temporary custody from the federal authorities pursuant to the IAD. Merlo was transferred to Philadelphia and his case was twice listed for trial, but on each occasion a Commonwealth witness failed to appear. As Merlo's federal sentence was soon set to expire, the Commonwealth opted to return him to federal custody and planned to

proceed with his open cases upon his release.

After Merlo's release from federal custody, he voluntarily returned to Philadelphia for trial. He subsequently filed a motion to quash his Pennsylvania indictments on the grounds that, pursuant to the time limitation set forth in Article IV of the IAD, his indictments should have been dismissed when he was originally returned from Philadelphia to the federal facility in Danbury. The trial court denied the motion, concluding that "as of the date of Merlo's release from federal custody . . . the [IAD] was no longer applicable." *Id.* at 395. Merlo was ultimately tried and convicted of passing bad checks.

On appeal, this Court reversed the trial court's denial of Merlo's motion to quash based upon the language of Article IV(e) of the IAD, known as the "anti-shuttling provision," which provides as follows:

> (e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

42 Pa.C.S.A. § 9101(IV)(e). The Court, citing the plain language of Article IV(e), held that the IAD "permits no exceptions to the requirement that appellant not be returned to [the sending state] untried." *Merlo,* 364 A.2d at 394–95. The Court found that the goal of the IAD, rehabilitative continuity, would be thwarted if a receiving state were allowed to circumvent the IAD's time limitations simply by repeatedly transporting a prisoner back and forth to the sending state.

As Destephano admits in his brief, *Merlo* is not directly on point. At issue in

*Merlo* was Article IV(e) of the IAD, the "anti-shuttling" provision, which applies to situations in which a prisoner is transported by the receiving state back to the sending state before trial on the pending charges in the receiving state. Here, Destephano remained incarcerated at all relevant times in Pennsylvania and was never transferred back to North Carolina. Accordingly, the anti-shuttling provision is not implicated in the matter now before the Court and, as such, *Merlo* is not controlling.

Destephano's reliance on *Snyder v. Sumner,* 960 F.2d 1448 (9th Cir.1992), is equally unavailing. In *Snyder,* the defendant was imprisoned in Iowa when a detainer was issued by the State of Nevada. Snyder was brought to Nevada to stand trial. Iowa paroled Snyder exactly 120 days after he arrived in Nevada; his Nevada trial did not take place until 426 days after his arrival. Snyder filed a petition for writ of habeas corpus, claiming the IAD required he be brought to trial within 120 days. The state argued that, because he had been paroled on the 120th day, the IAD no longer applied and was therefore not violated. The district court denied relief. On appeal, the Court of Appeals for the Ninth Circuit reversed, holding that "once the defendant has been received by the receiving state, the 120–day clock starts to run and cannot be turned off by a grant of parole by the sending state." *Id.* at 1453.

*Snyder* is distinguishable from the matter before us. First, the defendant in *Snyder* was not unconditionally discharged from his sending-state sentence, but was paroled. Thus, unlike Destephano, Snyder was not entirely free of state supervision and was still participating in some amount of rehabilitative programming, such as being subject to the supervision of a parole officer and the rules and regulations at-

tendant to his status as a parolee. Second, and more significantly, the *Snyder* court focused only on the IAD's strict requirement that trial be commenced within 120 days of the prisoner's arrival in the receiving state, without addressing the Agreement's plain language rendering it applicable solely to "prisoner[s] ... serving a term of imprisonment." We find this oversight in the court's analysis to be a crucial omission. Finally, the *Snyder* court was especially concerned with the potential for abuse if "[a] state could simply request the sending state to put the detained prisoner on parole on day 120" in order to avoid the IAD's time limitations. In the case at bar, the possibility of a collusive or fraudulent parole orchestrated by the sending and receiving states is not at issue—Destephano was fully discharged from his sentence and had no further obligations to North Carolina.

The courts of several other states have addressed the same factual scenario and concluded that the IAD ceases to apply once a prisoner is released from his sentence in the sending state. For example, in *State v. Quiroz,* 94 N.M. 517, 612 P.2d 1328 (App.1980), the defendant was indicted by a state grand jury on drug trafficking charges. Prior to the return of that indictment, Quiroz was convicted of unrelated federal charges and imprisoned in a federal correctional facility. Thereafter, the State of New Mexico lodged a detainer against him and requested temporary custody pursuant to the IAD for the purpose of trying him on his state drug trafficking charges. Quiroz was transferred by the federal authorities to state custody, and a trial date was set. Prior to his trial date, and prior to the date before which he was required to be tried under the IAD, Quiroz was discharged from his federal sentence.

On the day he was scheduled for trial, which fell outside the IAD's time limita-

tions, Quiroz filed a motion to dismiss his indictment. The trial court granted the motion and the state appealed. The Court of Appeals reversed, finding that, upon his release from federal custody prior to the date he was required to be tried in state court under Article IV(c) of the IAD, Quiroz "could no longer rely on [the] provisions [of the IAD]" because the policy considerations underlying the IAD, i.e., "the eradication of uncertainties which obstruct programs of prisoner treatment and rehabilitation," *id.* at 1331, no longer existed. Notably, the New Mexico court rejected Quiroz's reliance on this Court's decision in *Merlo,* finding its facts distinguishable.

Similarly, in *State v. Butler,* 496 So.2d 916 (Fla.App.1986), Butler was imprisoned in Ohio when a Florida detainer was lodged against him. He requested disposition pursuant to the IAD and was transported to Florida. Prior to the expiration of the 180–day time limit under Article III(a) of the IAD, Butler was discharged from his Ohio sentence. When Butler subsequently moved for dismissal on IAD speedy trial grounds, the trial court granted relief. The appeals court reversed, finding that: (1) the IAD applies only to "prisoners" of sending states and once an individual is discharged by the sending state, he is no longer a "prisoner"; and (2) the policy rationale behind the IAD cease to be relevant once an individual is no longer incarcerated and subject to the sending state's rehabilitative programs.

We agree with the rationales advanced by the *Quiroz* and *Butler* courts, as well as numerous courts from other jurisdictions around the country, that both the plain language of the IAD and the policy considerations underlying the statute militate in favor of a finding that its terms no longer apply once a prisoner has been discharged from his sentence in the sending state.

368

*See Pristavec v. State,* 496 A.2d 1036 (Del. 1985) (release of prisoner during 180–day period in effect nullifies purpose of IAD); *State v. Oxendine,* 58 Md.App. 591, 473 A.2d 1311 (1984) (when prisoner released from incarceration upon expiration of term, he "stepped out from under the protective umbrella of the IDA" and stood in same position as any other accused); *State v. Thompson,* 19 Ohio App.3d 261, 483 N.E.2d 1207 (1984) (holding plain language of IAD making agreement applicable to persons serving "term of imprisonment" and statute's expressed purpose of facilitating rehabilitation support finding that IAD no longer applies once prisoner discharged from sending-state sentence); *State v. Dunlap,* 57 N.C.App. 175, 290 S.E.2d 744 (1982) (prisoner's release from sending-state sentence during 180–day period essentially nullifies stated purposes of IAD and, thus, its speedy trial provisions no longer applicable).

Because the IAD no longer applied to Destephano once he was discharged from his North Carolina sentence, its time limitations did not bar his Pennsylvania prosecution and the court of common pleas properly assumed jurisdiction over his case. Moreover, because Destephano was not entitled to a dismissal of his charges, his trial counsel was not ineffective for failing to file a motion to dismiss. *Commonwealth v. Bishop,* 742 A.2d 178, 187 (Pa.Super.1999) (counsel may not be deemed ineffective for failing to pursue meritless claim).

Order affirmed.