No. 62,056

STATE OF KANSAS, *Appellant*, v. ALLEN R. JULIAN, *Appellee.*
(765 P.2d 1104)

Opinion filed December 9, 1988.

*Gene Porter*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for the appellant.

*Charles D. Dedmon*, assistant appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, C.J.: This is an appeal by the State from an order of the Barton County District Court dismissing the information in a criminal case. The State may appeal such an order as a matter of right. K.S.A. 1987 Supp. 22-3602(b)(1). Before us in this matter is a question of first impression: Whether the 180-day period of limitation for trial of a criminal case, contained in K.S.A. 22-4303 of the Uniform Mandatory Disposition of Detainers Act, continues in effect after the prisoner is released from confinement.

The Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 *et seq.*, deals with intrastate detainers. K.S.A. 22-4301 provides in substance that any person who is imprisoned in a penal institution of this state may request final disposition of any untried indictment, information, or complaint pending against him in Kansas. The prisoner's request must be in writing and must be sent both to the court in which the charge is pending and to the county attorney charged with the duty of prosecuting it. K.S.A. 22-4302 requires the warden or other person having custody of the prisoner to prepare a certificate setting forth the term of commitment under which the prisoner is being held, and certain other information, and to send by certified or registered mail, return receipt requested, one copy of the prisoner's request and one copy of the certificate to the court and one copy of each to the county attorney.

K.S.A. 22-4303, the statute with which we are primarily concerned, reads as follows:

"**Trial within 180 days after receipt of request and certification, exceptions; dismissal, when.** Within one hundred eighty (180) days after the receipt of the request and certificate by the court and county attorney or within such additional time as the court for good cause shown in open court may grant, the prisoner or his counsel being present, the indictment, information or complaint shall be brought to trial; but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for him to be heard. If, after such a request, the indictment, information or complaint is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information or complaint be of any further force or effect, and the court shall dismiss it with prejudice."

K.S.A. 22-4304 provides in substance that the escape of a prisoner from custody subsequent to his execution of a request for final disposition of an untried information voids the request.

K.S.A. 22-4307 provides: "This article shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." The act is, of course, a uniform act which has been adopted not only in Kansas but also in many other states. See Am. Jur. 2d, Desk Book, Item No. 124 (1988 Supp.).

The facts are not in dispute. On April 24, 1987, in Case No. 86 CR 323, Allen R. Julian entered a plea of guilty in Barton County District Court to a charge of felony possession of marijuana. He was sentenced to imprisonment for a term of one to ten years. At the same time, his probation in another Barton County case, No. 85 CR 298, was revoked, and he was ordered to serve a one-year jail sentence imposed in that case concurrent with the one- to ten-year felony sentence. He was placed in the state penitentiary at Lansing, Kansas, to serve the combined sentence.

On June 29, 1987, the State filed a detainer with the Secretary of Corrections, informing Julian that he was charged with aggravated incest, K.S.A. 1987 Supp. 21-3603, in Case No. 87 CR 294 in Barton County District Court. On August 25, 1987, Julian made a written request under the Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 *et seq.*, and on August 31 the Barton County Attorney received and filed the request for disposition on the new charge. Julian was brought back to Barton County on September 2, and had a first appearance on the aggravated incest charge. On September 24, a preliminary hearing was held, and on September 25 Julian was arraigned on that charge. He was then returned to the penitentiary.

On October 9, 1987, Julian was placed on probation in Cases Nos. 85 CR 296 and 86 CR 323, and he was released on bond for later appearance on the aggravated incest charge made in Case No. 87 CR 294. He has not been in the penitentiary or otherwise in custody since October 9, 1987.

Julian's jury trial on the aggravated incest charge was scheduled to commence on March 11, 1988. On March 9, he filed a motion to dismiss the aggravated incest charge for failure of the State to bring him to trial within 180 days from August 31, 1987, the date on which the county attorney received Julian's request for disposition. On March 10, the motion to dismiss was argued to the trial court. Defendant contended that 180 days from August 31 expired on February 27, 1988. The State argued that the Uniform Mandatory Disposition of Detainers Act no longer applied after Julian's release from custody, that the 180 days should be calculated from date of arraignment, September 25, 1987, pursuant to the speedy trial act, K.S.A. 22-3402(2), and thus the 180 days had not yet expired. The trial court sustained the defense motion, and the State appeals.

We have not found any case construing the Uniform Mandatory Disposition of Detainers Act and determining the precise issue which we face here. There are many cases, however, which construe similar provisions of the Interstate Agreement on Detainers, another uniform act designed to accelerate the disposition of cases out of which detainers are issued. The Interstate Agreement on Detainers has interstate rather than intrastate application. It has also been adopted in Kansas. See K.S.A. 22-4401 et seq. Both acts are designed to relieve prisoners of the unfavorable consequences of pending detainers. The courts which have construed the speedy trial provisions of the Interstate Agreement on Detainers uniformly hold that when a defendant is released from custody, his rights regarding a speedy trial are the same as those of any other individual.

For example, in State v. Tarango, 105 N.M. 592, 595, 734 P.2d 1275 (N.M. App.), cert. denied 105 N.M. 521 (1987), the New Mexico court said:

"When a defendant is discharged by a sending state, the purpose of the [Interstate Agreement on Detainers] loses significance and defendant can no longer rely on its provisions. [Citation omitted.] The IAD only applies to individuals while they are serving a prison term. [Citations omitted.] Once the

prisoner is released, his rights regarding a speedy trial are the same as those of any other individual."

See *Pristavec v. State*, 496 A.2d 1036 (Del. 1985); *State v. Oxendine*, 58 Md. App. 591, 473 A.2d 1311 (1984); *State v. Quiroz*, 94 N.M. 517, 612 P.2d 1328 (N.M. App. 1980); *State v. Thompson*, 19 Ohio App. 3d 261, 483 N.E.2d 1207 (1984); *State v. Smith*, 353 N.W.2d 338 (S.D. 1984).

The District Court of Appeals of Florida (Second District) clearly explains the purpose of the speedy trial provision of the Interstate Agreement on Detainers in its opinion in *State v. Butler*, 496 So. 2d 916, 917 (Fla. Dist. App. 1986), as follows:

"The IAD was enacted to provide certainty and prevent obstruction in 'programs of prisoner treatment and rehabilitation.' § 941.45(1), Fla. Stat. The purpose of the act is to 'obviate difficulties in securing speedy trials of persons incarcerated in other jurisdictions and to minimize the time during which there is an inherent danger that a prisoner may forego preferred treatment or rehabilitation benefits.' *State v. Dunlap*, 57 N.C. App. 175, 290 S.E.2d 744, 745 (N.C. App.), *cert. denied*, 306 N.C. 388, 294 S.E.2d 213 (1982). A detainer may cause truly adverse consequences to the prisoner while in the sending jurisdiction: he may be precluded from eligibility for parole consideration; he may be excluded from work-release programs; or he might be confined under stricter security because of prison officials' fear that he might attempt to escape. *State v. Oxendine*, 58 Md. App. 591, 473 A.2d 1311, 1314 (1984). All of those consequences of detainers, however, expire when the prisoner is no longer incarcerated. At that point the IAD—and its attendant speedy trial element—is no longer applicable. *Dunlap*, 290 S.E.2d at 745."

Similarly, in our case of *In re Habeas Corpus Application of Sweat*, 235 Kan. 570, 573-74, 684 P.2d 347 (1984), Justice Lockett, speaking for a unanimous court, said:

"The purpose of the Agreement [on Detainers], as set forth in Article I, is to encourage the orderly and expeditious disposition of detainers based on untried indictments, informations or complaints, in an effort to reduce uncertainty and facilitate prisoner treatment and rehabilitation in the state where the prisoner is incarcerated. . . .

. . . .

"The Uniform Mandatory Disposition of Detainers Act (Act), K.S.A. 22-4301 *et seq.*, is a Kansas intrastate procedure whereby persons imprisoned in this state may request final disposition of other Kansas charges pending against them. The procedures to obtain final disposition of the charges pending under the Act are similar to the procedures of the Agreement.

. . . .

"This court has determined that the Agreement and the Act are parallel acts designed to secure a speedy trial to the person incarcerated in a penal institution either in this or another state. Few cases determining questions arising from the Agreement have been dealt with by this court, but we have had numerous cases

arising under the Act. Questions answered as to the Act are therefore precedent for questions arising under the Agreement."

One Missouri case is strikingly similar to the case at hand. In *State ex rel. Haynes v. Bellamy,* 747 S.W.2d 189 (Mo. App. 1988), the relator, Haynes, while incarcerated in a Missouri correctional institution, filed a request under the Uniform Mandatory Disposition of Detainers Act for the disposition of a weapons charge. Haynes, however, was paroled from prison and released from the correctional institution before the running of the 180 days allowed for disposition of the weapons charge. After the 180 days had run, he filed an action for a writ of prohibition to prevent the State from taking any further action on the weapons charge. The Missouri Court of Appeals held that the Uniform Mandatory Disposition of Detainers Act was no longer available to the prisoner after his discharge from custody on parole. The court noted, citing *State v. Smith,* 686 S.W.2d 543, 547 (Mo. App. 1985), that the Uniform Mandatory Disposition of Detainers Act is to be construed in harmony with the Agreement on Detainers. The court concluded:

"When relator was released on parole within the 180 days following his request, he lost the right to avail himself of [Mo. Rev. Stat. § 217.450 (1986), the Missouri version of the Uniform Mandatory Disposition of Detainers Act]. His right to a speedy trial on the weapons charge is the same as that of any other individual." 747 S.W.2d at 190-91.

The Uniform Mandatory Disposition of Detainers Act speaks of "[a]ny person who is imprisoned in a penal or correctional institution of this state"; "prisoners" and "a prisoner," K.S.A. 22-4301; "the prisoner," K.S.A. 22-4302; "the prisoner," K.S.A. 22-4303; "any prisoner," K.S.A. 22-4304; and "prisoners," K.S.A. 22-4306. Clearly, the Act is intended to apply to prisoners, those who are in the custody of the Secretary of Corrections. Persons who are on parole or probation are no longer in physical custody; they are not prisoners. No adverse consequences flow to a probationer or a parolee from a detainer.

We agree with the construction placed upon the Uniform Mandatory Disposition of Detainers Act by the Missouri court. Once Julian was released on probation and bond, his rights to a speedy trial were the same as any other individual charged with a felony in the State of Kansas, and he no longer had the right to rely upon the speedy trial provisions of the Act.

The judgment of the district court is reversed, and this case is remanded for further proceedings.