Evan H. Ice Douglas County Counselor US Bank Tower 900 Massachusetts, Suite 500 P.O. Box 189 Lawrence, Kansas 66044
Dear Mr. Ice:
You inquire whether the Interstate Agreement on Detainers[1] (IAD) and the Uniform Mandatory Disposition of Detainers Act[2] (Detainers Act) apply to persons serving sentences in county jails.
The purpose of the IAD and the Detainers Act is to relieve prisoners of the unfavorable consequences of pending detainers[3] by establishing procedures whereby prisoners and prosecuting authorities in Kansas and other states can dispose of pending criminal charges.[4] The Detainers Act applies to intrastate charges; the IAD exists for charges brought by prosecutors in federal and other state jurisdictions. Additionally, the IAD and the Detainers Act are "parallel acts designed to secure a speedy trial to the person incarcerated in a penal institution either in this or another state."[5]
The genesis of the IAD and the Detainers Act is found in uniform legislation devised by the Council of State Governments in 1957 to address problems faced by prison authorities in their attempts to rehabilitate prisoners subject to detainers:[6]
 "The prison administrator is thwarted in his efforts toward rehabilitation. The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for parole; there is little hope for his release after an optimum period of training and treatment, when he is ready for return to society with an excellent possibility that he will not offend again. Instead, he often becomes embittered with continued institutionalization and the objective of the correctional system is defeated."[7]
Kansas adopted the precursor to the current Detainers Act in 1959.[8]
This Act requires "a warden, superintendent or other official having custody of prisoners" to "promptly inform" the prisoner of any untried indictments or complaints in Kansas and advise the prisoner of the right to request a final disposition.[9] Failure of an official to timely advise the prisoner may result in dismissal of the charge.[10]
However, the right to request final disposition belongs only to a "person who is imprisoned in a penal or correctional institution of thisstate."[11]
Similar verbiage exists in the Interstate Agreement on Detainers adopted by Kansas in 1969. As one of almost 50 party states to this Agreement,[12] the state of Kansas acknowledges through the IAD that detainers "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation."[13] As in the Detainers Act, the IAD applies only to individuals who have "entered upon a term of imprisonmentin a penal or correctional institution of a party state."[14]
While the terms "imprisoned," "imprisonment," and "penal or correctional institution" are not defined in either the IAD or the Detainers Act, both legislative schemes are part of the Kansas Code of Criminal Procedure (Code),[15] which uses definitions found in the Kansas Criminal Code (Criminal Code) except where the context requires a different meaning.[16]
The Criminal Code defines "correctional institution" by identifying certain correctional facilities[17] as well as "any other correctional institution established by the state for the confinement of offenders, and under control of the secretary of corrections."[18] "Imprisonment" means "imprisonment in a facility operated by the Kansas department of corrections."[19]
These terms contrast with verbiage in the Criminal Code relating to sentencing defendants to "jail" for misdemeanor convictions and to "county jail" for certain felony convictions.[20] Jails are generally operated by sheriffs — not the Kansas Department of Corrections.[21]
Clearly, Kansas law distinguishes between county jails and correctional institutions operated by the Kansas Department of Corrections.
We also note that both the Detainers Act and the IAD are replete with references to "good time" earned by the prisoner, parole eligibility, decisions by the state parole agency, and post release supervision periods[22] — terms primarily compatible with confinement in a prison facility rather than a county jail.[23] In light of the verbiage in both legislative schemes and given the legislative history embracing rehabilitation of prisoners in state correctional facilities, it is our opinion that county jails are not "penal or correctional institutions of the state" for purposes of the Detainers Act and the IAD.[24]
While the Kansas appellate courts have not directly addressed this issue, our conclusion is buttressed by decisions from other appellate courts, including the 10th Circuit Court of Appeals, that the Interstate Agreement on Detainers does not apply to persons serving sentences in county jails.[25] The rationale for most of these decisions is based upon the distinction between jails and prisons and the dearth of rehabilitation programs in local jails.
While our research detected no state appellate court decisions analyzing the application of the Detainers Act to county jails,[26] we believe that an appellate court would construe the Detainers Act in parimateria with the IAD and conclude that neither legislative scheme applies to a person serving a sentence in a county jail. As your request addresses only statutory interpretation of the IAD and the Detainers Act, we do not consider constitutional or statutory speedy trial issues.[27]
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] K.S.A. 22-4401 et seq.
[2] K.S.A. 22-4301 et seq.
[3] A detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction. UnitedStates v. Mauro, 436 U.S. 340, 359, 98 S.Ct. 1834, 56 L.Ed.2d 329
(1978).
[4] State v. Julian, 244 Kan. 101 (1988).
[5] Id. at 104. Sweat v. Darr, 235 Kan. 570 (1984).
[6] Council of state governments, Suggested state legislation program for 1957.
[7] Id. at 74. 3 U.S. Code Congressional Administrative News, 91st Congress, 2nd Session at p. 4864 (1970).
[8] K.S.A. 62-2901 et seq. (repealed, L. 1970, Ch. 129).
[9] K.S.A. 22-4301.
[10] Id.
[11] Id. (emphasis added).
[12] Meadows, Interstate Agreement on Detainers and the Rights ItCreated, 18 Akron Law Review 691, 693 (Spring, 1985) (listing of other states that are parties to IAD).
[13] Article I, K.S.A. 22-4401.
[14] Article III, K.S.A. 22-4401 (emphasis added).
[15] K.S.A. 22-2101 et seq.
[16] K.S.A. 22-2201.
[17] Lansing, Hutchinson, Topeka, Norton, Ellsworth, Winfield, Osawatomie, Stockton and El Dorado Correctional Facilities, Larned Correctional Mental Health Facility, and Wichita Work Release Facility.
[18] K.S.A. 2003 Supp. 21-4602(e). See K.S.A. 75-5202 (d).
[19] K.S.A. 21-4703(m). See K.S.A. 21-4703(r) ("'prison' means a facility operated by the Kansas department of corrections").
[20] K.S.A. 2003 Supp. 21-4603d(a)(1)(3).
[21] K.S.A. 19-811.
[22] K.S.A. 22-4302; 22-4401, Article III.
[23] K.S.A. 21-4703 ("'good time' means a method of behavior . . . utilized by the department of corrections. Good time can result in a decrease of up to 20% of the prison part of the sentence. 'Postrelease supervision' means the release of a prisoner to the community after having served a period of imprisonment . . . subject to conditions imposed by the Kansas parole board and to the secretary of correction's supervision.")
[24] We note, also, that both legislative schemes refer to "penal or correctional institutions of a state" — not "in a state."
[25] United States v. Wilson, 719 F.2d 1491 (10th Cir. 1983); UnitedStates v. Taylor, 173 F.3d 538 (6th Cir. 1999);State v. Wyer, 2003 WL 22976573 (Ohio App. 8 Dist. 2003); State v. Fay, 763 So.2d 473 (Fl. 2000); Brewer v. State, 913 P.2d 73 (Id. 1996); State v. Breen,882 P.2d 472 (Id. 1994); State v. Wade, 772 P.2d 1291 (Nev. 1989); Dorseyv. State, 490 N.E.2d 260 (In. 1986). But see Escalanti v. Superior Court,799 P.2d 5 (Ariz. 1990) (IAD applies to those held in jails as well as to those in prisons).
[26] State v. Julian, 244 Kan. 101(1988) (" the [Detainers] Act is intended to apply to prisoners, those who are in the custody of the Secretary of Corrections. Persons who are on parole or probation are no longer in physical custody; they are not prisoners"). But see State v.Hartman, 27 Kan.App.2d 98 (2000) (defendant waived speedy trial rights by failing to take action under Detainers Act while in county jail). Seealso Attorney General Opinion No. 96-6.
[27] See State v. Hartman, 27 Kan.App.2d 98 (2000).