NOT DESIGNATED FOR PUBLICATION

No. 115,631

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

PAUL FRANK GUTHRIE, JR.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed March 31, 2017. Affirmed.

*Steven J. Obermeier*, senior deputy district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before LEBEN, P.J., POWELL and SCHROEDER, JJ.

POWELL, J.:  Paul Frank Guthrie, Jr., while incarcerated in the Miami County jail, made two requests for disposition of pending Johnson County charges under the Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 *et seq*. Guthrie later filed a motion to dismiss on the basis that he was not brought to trial within 180 days of making his disposition request as required by UMDDA. The district court granted his motion and dismissed the State's complaint with prejudice, resulting in this appeal by the State. Because we agree with the district court that the UMDDA applies to Guthrie and

1

that Guthrie's second disposition request substantially complied with the UMDDA, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, Guthrie was convicted of a felony and two misdemeanors in Miami County. He was sentenced to 12 months in prison for the felony and 12 months in jail for the misdemeanors, with the sentences to be served consecutively, but was granted probation. About 1 year later, Guthrie was charged in Johnson County with driving under the influence of alcohol and driving while a habitual violator. He waived the preliminary hearing and initially pleaded not guilty. A plea hearing was later scheduled for August 21, 2014. After learning of Guthrie's new charges in Johnson County, the Miami County attorney moved to revoke Guthrie's probation, resulting in Guthrie being taken into custody on August 6, 2014. Because he was incarcerated in the Miami County jail, Guthrie did not appear for his Johnson County plea hearing. The Johnson County District Court issued a bench warrant.

In September 2014, Guthrie's probation in his Miami County case was revoked, and he was placed in the custody of the secretary of corrections to serve his 12-month felony prison sentence. After receiving 104 days of jail credit, Guthrie completed his felony prison sentence by January 2015 and was returned to Miami County to serve his 12-month jail sentence for the misdemeanor convictions. At some point, Miami County transferred Guthrie to the Anderson County jail to serve the remainder of his sentence.

In February 2015, Guthrie delivered a letter addressed to the Johnson County district attorney requesting disposition of his pending Johnson County charges. A copy was also sent to Anderson County jail officials. When Guthrie's attorney realized that Anderson County was refusing to help Guthrie with his request, she filed a copy of the request with the district court. On July 16, 2015, Guthrie, though his attorney, filed a

second request, which alleged he was (1) in the custody of the Miami County sheriff; (2) serving a sentence for a Miami County conviction; (3) currently being held in the Anderson County jail; and (4) again requesting disposition of the Johnson County detainer under the UMDDA. Copies of the request were faxed to a Johnson County assistant district attorney and the Miami County sheriff.

In January 2016, once he had completed serving the sentence in his Miami County case, Guthrie was transferred to the custody of the Johnson County sheriff, and a trial was set for April 11, 2016, on his Johnson County charges—270 days after Guthrie filed his second disposition request. Before trial, Guthrie filed a motion to dismiss, claiming he had not been brought to trial within 180 days of the filing of his disposition request as required by the UMDDA. In response, the State argued that the UMDDA did not apply to Guthrie because he had been incarcerated in a county jail when he made his disposition request. At the motion hearing, the State also argued that Guthrie's requests did not substantially comply with the UMDDA. The district court rejected the State's arguments, concluding that the UMDDA did apply to Guthrie and that even if Guthrie's first request did not substantially comply with the UMDDA's requirements, his second request did. As a result, the district court granted Guthrie's motion and dismissed the State's complaint with prejudice.

The State timely appeals.

### DID THE DISTRICT COURT ERR IN GRANTING GUTHRIE'S MOTION AND DISMISSING THE STATE'S COMPLAINT?

In reviewing whether the district court's dismissal of the State's complaint was proper, we must interpret and apply the UMDDA. Interpretation of a statute is a question of law over which we exercise unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015); see also *State v. Breedlove*, 295 Kan. 481, 486, 286 P.3d 1123

(2012) (de novo review over whether defendant's statutory right to speedy trial was violated); *State v. Angelo*, 287 Kan. 262, 268, 197 P.3d 337 (2008) (unlimited review over question regarding application of detainer statute).

Our legislature originally adopted the UMDDA in 1959, later codified as K.S.A. 62-2901 *et seq*. (Corrick 1964). L. 1959, ch. 362. Eleven years later, the statute was repealed and recodified as K.S.A. 22-4301 *et seq*. L. 1970, ch. 129, § 22-4301. *Hayes v. State*, 210 Kan. 231, 232, 499 P.2d 515 (1972). The UMDDA provides the procedure for which inmates of a penal or correctional institution of this state may request disposition of any pending Kansas criminal charges. *State v. Brooks*, 206 Kan. 418, 421, 479 P.2d 893 (1971). Its purpose is to prevent pending criminal charges from being indefinitely suspended while a defendant is imprisoned on other charges and to prevent delays in the administration of justice by requiring courts to hear cases within a reasonable period of time. *State v. Ellis*, 208 Kan. 59, 61, 490 P.2d 364 (1971). The right is statutory, not constitutional. *State v. Stanphill*, 206 Kan. 612, 616, 481 P.2d 998 (1971). The UMDDA requires that "the passage of the statutory period . . . must be treated as conclusive of undue delay if all other conditions are met." 206 Kan. at 616.

K.S.A. 2015 Supp. 22-4301 states:

"(a) Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing addressed to the court in which the indictment, information, motion to revoke probation or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

"(b) The warden, superintendent or other official having custody of prisoners shall promptly inform each prisoner in writing of the source and nature of any untried indictment, information, motion to revoke probation or complaint against such prisoner

4

of which the warden, superintendent or other official has knowledge or notice, and of such prisoner's right to make a request for final disposition thereof.

"(c) Failure of the warden, superintendent or other official to inform a prisoner, as required by this section, within one year after a detainer has been filed at the institution shall entitle such prisoner to a final dismissal of the indictment, information, motion revoke probation or complaint with prejudice."

K.S.A. 22-4302 states:

"The request shall be delivered to the warden, superintendent or other officials having custody of the prisoner, who shall forthwith:

"(a) Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state board of probation and parole relating to the prisoner;

"(b) for crimes committed on or after July 1, 1993, certify the length of time served on the prison portion of the sentence, any good time earned and the projected release date for the commencement of the postrelease supervision term; and

"(c) send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the county attorney to whom it is addressed."

K.S.A. 2015 Supp. 22-4303 states:

"Within 180 days after the receipt of the request and certificate by the court and county attorney or within such additional time as the court for good cause shown in open court may grant, the prisoner or such prisoner's counsel being present, the indictment, information or complaint shall be brought to trial or the motion to revoke probation shall be brought for a hearing; but the parties may stipulate for a continuance or a continuance

5

may be granted on notice to the attorney of record and opportunity for such prisoner to be heard. If, after such a request, the indictment, information or complaint is not brought to trial within that period, or the motion to revoke probation is not brought for a hearing within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information, motion to revoke probation or complaint be of any further force or effect, and the court shall dismiss it with prejudice."

The State argues the district court erred in granting Guthrie's motion and dismissing its complaint for two reasons: (1) The UMDDA did not apply to Guthrie's case and (2) even if the UMDDA did apply, Guthrie's disposition requests did not substantially comply with its provisions.

A.     *Applicability*

The State argues the UMDDA did not apply to Guthrie because he was not "imprisoned in a penal or correctional institution of this state" when he made his disposition requests since he was incarcerated in a county jail. See K.S.A. 2015 Supp. 22-4301(a). According to the State, the UMDDA was meant to apply only to prisoners in the custody of the Kansas Department of Corrections (KDOC). In making its argument, the State relies on the UMDDA's language, definitions from the revised sentencing guidelines and the Kansas Criminal Code, legal maxims, the UMDDA's history, and older cases interpreting the UMDDA. We need not sift through all the State's arguments, however, because the Kansas Supreme Court has already addressed the issue.

In *State v. Burnett*, 297 Kan. 447, 301 P.3d 698 (2013), Burnett was charged with committing several crimes in Reno County. About 2 months later, in an unrelated McPherson County case, Burnett was sentenced to 44 months in prison. Although the sentencing journal entry indicated that Burnett was to be transported to the custody of the Secretary of Corrections, he began serving his sentence in the McPherson County jail because other unrelated criminal charges were pending there. Burnett filed a UMDDA

6

request about 3 months later. Five weeks after he filed his request, he was transferred to a KDOC facility. When the Reno County proceedings finally began, Burnett filed a motion to dismiss on the grounds that he was not brought to trial within 180 days of his UMDDA request. The district court denied the motion, finding that the UMDDA did not apply because Burnett was not in a KDOC facility when he filed his request. On appeal, a panel of this court affirmed, finding procedural deficiencies in Burnett's request. See 297 Kan. at 450-51. The Kansas Supreme Court granted review. 297 Kan. at 451.

In discussing the procedural issues related to his request, our Supreme Court found that Burnett was in KDOC custody even though he was physically located in the McPherson County jail. 297 Kan. at 455-56. Later, when discussing whether the UMDDA applied to Burnett's case, the court noted that the remaining question was whether Burnett was imprisoned when he filed his request. 297 Kan. at 458. In the court's words:

> "[H]e certainly was because he was in the McPherson County Jail. See *State v. Huff*, 277 Kan. 195, 205, 83 P.3d 206 (2004); see also *State v. Cole*, 238 Kan. 370, 373, 710 P.2d 25 (1985) ('penal institution' refers to institutions under the supervisions of state and local authorities, including county jails). The UMDDA provides that anyone imprisoned in *either* a penal institution *or* correctional institution may invoke its provisions. K.S.A. 22-4301. We hold that at the time he filed his UMDDA request Burnett was imprisoned in a penal institution and properly invoked the UMDDA's speedy trial provision. It was error for the district court to hold otherwise." 297 Kan. at 458.

So, according to the Supreme Court, "a penal or correctional institution of this state," as used in the UMDDA, includes a county jail.

The State mentions *Burnett* in its brief, arguing the court did not consider the whole phrase because it ignored "of this state," which shows that the statute is referring to KDOC facilities and not county jails. But we presume our Supreme Court was aware of

7

the entire phrase, including the last three words. In fact, the court quoted all of K.S.A. 22-4301 earlier in its decision. See 297 Kan. at 451-52. While it is true the court found Burnett was in KDOC custody even though he was physically located in the McPherson County jail, it made that finding in the context of whether his request was valid since it was addressed to the Secretary of Corrections and not to a McPherson County jail official. 297 Kan. at 455-56. In answering the question of whether Burnett was imprisoned, the court concluded that because he was in the McPherson County jail, he was imprisoned. 297 Kan. at 458. It seems clear to us the court held that someone who is incarcerated in a county jail is imprisoned in a penal institution, as the UMDDA requires. See 297 Kan. at 458.

In its brief, the State also cites *State v. Julian*, 244 Kan. 101, 105, 765 P.2d 1104 (1988), where our Supreme Court stated:

> "The Uniform Mandatory Disposition of Detainers Act speaks of '[a]ny person who is imprisoned in a penal or correctional institution of this state'; 'prisoners' and 'a prisoner,' K.S.A. 22-4301; 'the prisoner,' K.S.A. 22-4302; 'the prisoner,' K.S.A. 22-4303; 'any prisoner,' K.S.A. 22-4304; and 'prisoners,' K.S.A. 22-4306. Clearly, the Act is intended to apply to prisoners, those who are in the custody of the Secretary of Corrections. Persons who are on parole or probation are no longer in physical custody; they are not prisoners. No adverse consequences flow to a probationer or a parolee from a detainer."

But the question before the *Julian* court was whether the UMDDA applied to someone on probation, 244 Kan. at 103, not, as in *Burnett*, whether the UMDDA applied to someone being held in a county jail. The *Julian* decision was also issued in 1988, prior to *Burnett*, which means that *Burnett* is more indicative of the court's current position as it came later.

Finally, the State, in a letter of supplemental authority, notes the UMDDA has been amended to apply only to prisoners in KDOC custody and argues that the amendment provides insight into the legislature's original intent. We are unpersuaded by this argument for two reasons. First, the Kansas County and District Attorneys Association's testimony in support of the legislation amending the UMDDA actually suggests that the UMDDA had to be amended because of *Burnett*. See 2016 S.B. 392. Second, while we appreciate the State's effort to shed more light on the legislature's original intent when it enacted the UMDDA, such insight would be more helpful to us if we had the duty in the first instance to interpret the UMDDA. However, our Supreme Court has already done this in *Burnett* when it held that someone who is incarcerated in a county jail is imprisoned in a penal institution. 297 Kan. at 458. As we are duty bound to follow Kansas Supreme Court precedent, *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015), we must conclude the district court correctly ruled that even though Guthrie was in a county jail and in the custody of the Miami County sheriff when he requested disposition of his pending charges, the UMDDA applied.

B.      *Substantial Compliance*

To invoke its protections, only substantial compliance with the UMDDA is required. *In re Habeas Corpus Application of Sweat*, 235 Kan. 570, Syl. ¶ 5, 684 P.2d 347 (1984); see *Ekis, Petitioner v. Darr*, 217 Kan. 817, 822-23, 539 P.2d 16 (1975). A proper disposition request must (1) "be in writing"; (2) be "addressed to the court in which the indictment, information, motion to revoke probation or complaint is pending"; (3) be addressed "to the county attorney charged with the duty of prosecuting it"; and (4) "set forth the place of imprisonment" K.S.A. 2015 Supp. 22-4301(a). The prisoner must deliver the request to the "warden, superintendent or other officials having custody of the prisoner." K.S.A. 22-4302; *Burnett*, 297 Kan. at 454. Once the request has been delivered, the burden of complying with K.S.A. 22-4302(a)-(c)'s requirements shifts to the prison officials. 297 Kan. at 454-55. Any deficiency in executing those

9

responsibilities is not attributable to the prisoner, nor should it prejudice the prisoner's ability to invoke the UMDDA. 297 Kan. at 455. The right that the UMDDA statutorily grants "'cannot be deprived by the laches of public officials.' [Citations omitted.]" 297 Kan. at 455.

Guthrie's first disposition request was in writing and was addressed to the Johnson County district attorney. It was not, however, addressed to the Johnson County District Court, and it did not state where he was imprisoned. Moreover, Guthrie delivered his request to Anderson County jail officials. The second request, which Guthrie's attorney filed on his behalf, was in writing and was filed with the Johnson County District Court. Copies of the request were faxed to the Johnson County district attorney and the Miami County sheriff. The request also stated that Guthrie was in the Miami County sheriff's custody, although he had been transferred to the Anderson County jail.

The State argues that Guthrie's requests did not substantially comply with the UMDDA because they were not addressed to the district court, were not sent to the warden, and did not certify how long Guthrie had been in jail, the length of his sentence, and the time remaining on his sentence. The State's argument is flawed for three reasons. First, Guthrie's second request was filed with the district court. Logic and common sense dictate that filing a document with a court is essentially the same as addressing the document to the court or, at least in this case, constitutes substantial compliance. Second, the State ignores *Burnett*, relying instead on older Supreme Court cases to support its argument that a request must be submitted to the warden. Here, faxing a copy to the Miami County sheriff, who had custody of Guthrie despite his being held in the Anderson County jail, was proper. Third, as our Supreme Court stated in *Burnett*, once a disposition request has been delivered, it becomes the prison officials' duty to fulfill the requirements of K.S.A. 22-4302(a)-(c). 297 Kan. at 454-55. And the prison officials' failure to execute their duty has no impact on a prisoner's ability to invoke the UMDDA. 297 Kan. at 455. Here, Guthrie's attorney certified that she faxed a copy of Guthrie's second disposition

10

request to the Miami County sheriff, thereby delivering the request to the official having custody of Guthrie. The sheriff's failure to comply with the requirements of K.S.A. 22-4302(a)-(c) cannot be blamed on Guthrie.

As Guthrie substantially complied with the UMDDA, the district court did not err in granting his motion and dismissing the State's complaint.

Affirmed.