NOT DESIGNATED FOR PUBLICATION

No. 124,262

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES SCOTT LOMON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed July 29, 2022.
Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek
Schmidt*, for appellee.

Before GREEN, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM:  James Scott Lomon received notice of his pending Lyon County
charges while serving a prison sentence for another case in the Hutchinson Correctional
Facility (HCF). Lomon filed two motions to dismiss the Lyon County case under the
Uniform Mandatory Disposition of Detainers Act (UMDDA), K.S.A. 22-4301 et seq.,
invoking his right to a speedy trial. The district court dismissed both motions. Lomon
now alleges he substantially complied with the statutory requirements of the UMDDA.
However, Lomon never provided a date for establishing when his UMMDA motion was
filed and, shortly after his arraignment on these charges, he was released on bond.

1

Because the UMDDA provides no relief once a defendant is released on bond, the district court did not err. Therefore, we affirm.

FACTS

In July 2015, the State charged Lomon with nonresidential burglary, felony theft, criminal damage to property, and misdemeanor theft for acts committed in 2011 in Lyon County. The district court issued an arrest warrant for Lomon the same day the State filed its complaint. Lomon was incarcerated in HCF when he received the detainer for his Lyon County case. From the record, we observe Lomon was paroled from HCF and the Lyon County District Court's arrest warrant was served on Lomon in August 2016. Lomon appeared in district court for a first appearance on August 22, 2016, and was released on bond on September 12, 2016. At Lomon's arraignment hearing on October 5, 2016, he pled not guilty and remained on bond supervision. Lomon's jury trial was scheduled to begin March 13, 2017, with a pretrial hearing set for March 8, 2017.

On February 1, 2017, the State moved to revoke Lomon's bond because he failed to report for bond supervision, his whereabouts were unknown, and he had absconded from parole. The district court revoked Lomon's bond and issued a bench warrant. Lomon failed to appear for his pretrial hearing on March 8, 2017, and the jury trial on March 13, 2017, was canceled. Lomon's bench warrant remained outstanding.

In February 2020, Lomon filed a pro se motion to dismiss his Lyon County case relying on the UMDDA. The record suggests Lomon was in custody in Cowley County for an unrelated crime when he wrote his pro se motion. However, the record is unclear as to when he was placed in custody in Cowley County.

In Lomon's pro se motion, he requested the district court dismiss the State's complaint against him because the State failed to timely bring him to trial within the

2

statutory time limitation—180 days—from his request for final disposition under the UMDDA. Lomon explained the State had filed its complaint against him while he was serving time in HCF and the Hutchinson prison officials failed to forward his request for final disposition to the district court and county attorney as required under the UMDDA.

While in custody, presumably in either Cowley County—from where he mailed his pro se motion to dismiss—or in El Dorado in Butler County—where orders to transport suggest he was located—Lomon was again informed of his detainer in Lyon County. Lomon requested records from the Kansas Department of Corrections (KDOC) records department asking for documentation from his prison file showing "the dates and information provided back in 2015-2016 pertaining to 180-day writ information with my signature" related to Lyon County, Sedgwick County, and Cass County, Missouri, cases. The KDOC employee who responded noted Lomon's file was empty and Lomon could file another writ.

On June 25, 2020, Lomon's counsel filed a supplemental motion to dismiss. The supplemental motion acknowledged a lack of documentation establishing when Lomon filed his written request for disposition. Before an evidentiary hearing on the motion to dismiss, Lomon subpoenaed all documentation between him and KDOC related to any detainer that arose while he was in KDOC custody.

In July 2020, the district court's previous bench warrant for failure to appear at the March 2017 pretrial hearing was served on Lomon. Soon after, the district court held an evidentiary hearing on Lomon's motion to dismiss. Lomon testified the HCF officials made him aware of the State's detainer in his Lyon County case while he was in custody and he submitted a written request for disposition of detainer to his Unit Team. Lomon claimed he filed his written request for disposition the same day he received the notice of his detainer, which was before his first appearance on August 22, 2016. Lomon also noted he had a prior issue with KDOC mishandling a request, which ultimately led to

3

dismissal of his Morris County case in *State v. Lomon*, No. 116,497, 2017 WL 1535229, at *4-5 (Kan. App. 2017) (unpublished opinion).

Lomon suggested in his supplemental motion to dismiss and during closing argument at the evidentiary hearing that even if the district court relied on the first appearance date, the State's 180-day time limitation would have expired on February 20, 2017. Lomon argued his failure to appear for pretrial hearing in March 2017 was irrelevant because the hearing was scheduled after the expiration of the 180-day limitation and the district court lost jurisdiction. Lomon specifically noted two prior issues he had with KDOC before the district court: (1) KDOC personnel interfered with Lomon's request for disposition in his Morris County case; and (2) despite the fact the district court issued a business record subpoena, KDOC personnel failed to produce the communications Lomon had with the KDOC records department in which he requested a copy of his 180-day writ from 2015-2016 and KDOC's response stating Lomon's file was empty.

The district court denied Lomon's motion to dismiss in a September 2020 memorandum decision, explaining Lomon had to prove he filed his UMDDA request for disposition before March 16, 2016—180 days before he was released on bond. The district court also noted, based on the evidence, the only date it could rely on to determine when Lomon made his request for disposition was the date of his first appearance on August 22, 2016. The district court ultimately found Lomon's testimony credible he had filed a request for disposition, but his testimony failed to establish he filed a request before March 16, 2016.

On September 30, 2020, Lomon's counsel filed a second motion to dismiss based on a constitutional speedy trial violation. Lomon claimed his testimony at the evidentiary hearing on his first motion to dismiss and the findings of fact in *Lomon*, 2017 WL 1535229, established he maintained a practice of requesting disposition of all detainers

4

for which he received notice. Lomon presented a slightly different argument in his second motion to dismiss. He suggested the State failed to timely serve the arrest warrant on him while he was in custody, which prevented him from asserting his rights under the UMDDA, and such delay was presumptively prejudicial. Lomon asked the district court to dismiss his Lyon County case on policy grounds to prevent the State from waiting to serve an arrest warrant on a defendant in custody until the State was ready to proceed with its case. Lomon presented no other evidence at the October 15, 2020 hearing on his second motion to dismiss, and the district court took judicial notice of the testimony from Lomon's evidentiary hearing on his first motion to dismiss.

At the October hearing on the second motion to dismiss, the district court clarified its previous finding that Lomon had made a request for final disposition, but the district court was unable to determine the exact date on which Lomon made his request for disposition. The district court specifically noted it did not make a finding that the State had knowledge of Lomon's request. The district court again denied Lomon's motion to dismiss.

On May 4, 2021, Lomon, based on plea negotiations, pled no contest to felony theft, a severity level 9 nonperson felony, and the State dismissed the remaining counts with prejudice.

ANALYSIS

*Lomon Did Not Substantially Comply with the UMDDA*

On appeal, Lomon focuses on an alleged violation of speedy trial rights under the UMDDA. He does not argue a constitutional violation of speedy trial rights on appeal as set forth in Lomon's second motion to dismiss before the district court. Lomon, therefore, waives and abandons a constitutional speedy trial violation on appeal. See *State v. Arnett*,

307 Kan. 648, 650, 413 P.3d 787 (2018) (issue not briefed deemed waived or abandoned).

Lomon argues the district court erred in denying his motion to dismiss his case because the State violated his right to a speedy trial under the UMDDA. Lomon contends he is raising a jurisdictional claim, which he can raise on appeal even after pleading no contest to the crime of theft. Lomon asks us to vacate his conviction and sentence and remand with directions to discharge because the district court lost jurisdiction when the State failed to timely bring him to trial. See K.S.A. 2015 Supp. 22-4303 (If the State fails to bring defendant to trial within statutory period, "no court of this state shall any longer have jurisdiction thereof . . . .").

The State responds Lomon failed to provide sufficient evidence of substantial compliance with the UMDDA. The State also asserts Lomon was released from custody on bond in the Lyon County case and was no longer subject to the UMDDA speedy trial provisions. Additionally, the State contends Lomon was subject to the same speedy trial provisions as any other defendant under K.S.A. 2016 Supp. 22-3402 and he waived such right by pleading no contest.

*Standard of review*

A defendant's statutory right to a speedy trial presents a question of law subject to de novo review. Statutory interpretation and determination of jurisdiction also involve questions of law over which an appellate court has unlimited review. *State v. Burnett*, 297 Kan. 447, 451, 301 P.3d 698 (2013).

*Discussion*

The UMDDA provides an intrastate procedure for Kansas prisoners to request final disposition of other pending charges within the state. *State v. Griffin*, 312 Kan. 716, 720, 479 P.3d 937 (2021). The UMDDA "prevent[s] indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges, and it seeks to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a reasonable amount of time." *Burnett*, 297 Kan. at 453; *State v. Ellis*, 208 Kan. 59, 61, 490 P.2d 364 (1971).

K.S.A. 2015 Supp. 22-4301(a) states:

"Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried . . . information . . . or complaint pending against such person in this state. The request shall be in writing addressed to the court in which the . . . information . . . or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment."

The UMDDA requires an individual who is imprisoned be brought to trial on a complaint or information within 180 days from the time the district court and county attorney receive the certificate from the prison officials of the inmate's substantially UMDDA compliant request. K.S.A. 2015 Supp. 22-4303; see *Griffin*, 312 Kan. at 717. After the 180-day time limitation expires, the district court loses jurisdiction over the case and the untried information or complaint must be dismissed with prejudice. K.S.A. 2015 Supp. 22-4303; *Burnett*, 297 Kan. at 448. Any time in which the inmate requested or agreed to a continuance or delay does not apply toward the 180-day period. K.S.A. 2015 Supp. 22-4303.

The right to a speedy trial in a UMDDA action is not a mere privilege but a right the accused cannot be deprived of by the laches of public officials. The right is also a

personal right the accused may waive by failing to assert it. *State v. Goetz*, 187 Kan. 117, 119-20, 353 P.2d 816 (1960). "[T]o obtain the right of a speedy trial under the [UMDDA], the inmate must take affirmative action to comply with all the provisions of the act, otherwise he waives his right to question whether he had a speedy trial. [Citations omitted.]" *Ellis*, 208 Kan. at 61. K.S.A. 2015 Supp. 22-4301(a) places the initial burden on an inmate to request final disposition of pending charges in writing and address such request to both the district court and county attorney where the charges are pending. The inmate must also deliver a copy of the request for final disposition to the official who has custody over him or her. K.S.A. 2015 Supp. 22-4302. Substantial compliance is sufficient to invoke the protections of the UMDDA. *Burnett*, 297 Kan. at 453.

Once the inmate substantially complies with UMDDA requirements, the burden shifts to prison officials to send the certification to the court and county attorney. *Burnett*, 297 Kan. at 454-55. To effectively shift the burden to the prison officials, the inmate must establish clear proof of wrongdoing by the officials. An inmate should not be prejudiced because of a deficiency in the prison officials' execution of statutory requirements. *Griffin*, 312 Kan. at 723-24. That is, once the inmate meets his or her burden and does what is required under the UMDDA, the district court may excuse statutory compliance when prison officials fail to comply with statutory requirements. See *Burnett*, 297 Kan. at 455. Cases involving detainers in which there is potentially misfeasance or malfeasance by custodial officials deserve careful consideration. *Sweat v. Darr*, 235 Kan. 570, 578, 684 P.2d 347 (1984).

While the district court found Lomon's testimony credible in that he filed a request for final disposition, the record lacks any documentation establishing when he made his request. We do not reassess witness credibility. *State v. Queen*, 313 Kan. 12, 20, 482 P.3d 1117 (2021). Thus, we cannot calculate whether the 180-day time limitation expired without knowing when the speedy trial clock started under the UMDDA. Without reweighing the district court's credibility determination, it is conceivable Lomon took

affirmative action or substantially complied with the UMDDA. However, as the State points out, in Lomon's Morris County case—which occurred before this case and was dismissed under the UMDDA—Lomon took affirmative steps to contact the court with his request for disposition when prison officials failed to do so. Lomon reasonably could have taken similar affirmative steps here to ensure the district court received his request. However, we need not linger on this issue because Lomon was granted bond on this case prior to his arraignment.

In a similar case, our Supreme Court addressed the effect of the UMDDA time limitation for trial of a criminal case after the inmate was released from confinement. In *State v. Julian*, 244 Kan. 101, 765 P.2d 1104 (1988), the defendant was released from custody, placed on probation, and released on bond for his detainer case. The defendant filed a motion to dismiss for the State's failure to bring him to trial within 180 days from the date the court and county attorney received his request for disposition. The district court sustained the motion, and the State appealed. Our Supreme Court reversed the district court, explaining:

> "Clearly, the [UMDDA] is intended to apply to prisoners, those who are in the custody of the Secretary of Corrections. Persons who are on parole or probation are no longer in physical custody; they are not prisoners. No adverse consequences flow to a probationer or a parolee from a detainer.
> 
>      ". . . Once Julian was released on probation and bond, his rights to a speedy trial were the same as any other individual charged with a felony in the State of Kansas, and he no longer had the right to rely upon the speedy trial provisions of the [UMDDA]." 244 Kan. at 105.

Once the district court released Lomon on bond on September 12, 2016, his rights to a speedy trial were the same as any other individual charged with a felony in Kansas. Lomon no longer had the right to rely on the speedy trial provisions of the UMDDA.

9

On appeal, Lomon does not argue a statutory speedy trial violation under K.S.A. 2016 Supp. 22-3402(b). See *Arnett*, 307 Kan. at 650 (issue not briefed deemed waived or abandoned). Even if Lomon had presented such argument on appeal, it would fail.

K.S.A. 2016 Supp. 22-3402(b) states:

> "If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within 180 days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (e)."

Lomon's speedy trial clock commenced from the date of his arraignment on October 5, 2016. Lomon's trial date of March 13, 2017—159 days after arraignment—fell within the 180-day statutory period.

A defendant generally waives his or her speedy trial right by pleading in district court. See *State v. Rodriguez*, 254 Kan. 768, 772, 869 P.2d 631 (1994). In fact, Lomon acknowledges an alleged speedy trial violation under K.S.A. 2016 Supp. 22-3402, rather than under the UMDDA, fails because he pled no contest.

Even if we addressed Lomon's speedy trial claim under K.S.A. 2016 Supp. 22-3402, his argument would fail not only under the premise his trial date was set within 180 days, but also because of his failure to appear for his pretrial hearing. K.S.A. 2016 Supp. 22-3402(d) explains the consequences of a defendant's failure to appear as it relates to his or her speedy trial rights. If a defendant fails to appear for a pretrial hearing and the district court issues a bench warrant—as was the case here—the trial must be rescheduled within 90 days after the defendant appeared. K.S.A. 2016 Supp. 22-3402(d).

10

The district court's bench warrant for Lomon's failure to appear for pretrial hearing was served on him on July 30, 2020. At that time, our Supreme Court had suspended statutory speedy trial provisions because of the COVID-19 pandemic. See Kansas Supreme Court Administrative Order 2020-PR-016, effective March 18, 2020 (time limitations under K.S.A. 2019 Supp. 22-3402 suspended). Speedy trial time limitations remained suspended beyond Lomon's new trial date on May 17, 2021. See Kansas Supreme Court Administrative Order 2021-PR-020, effective March 30, 2021 (most deadlines and time limitations resume April 15, 2021, but K.S.A. 2020 Supp. 22-3402 deadlines and time limitations remain suspended); see also Kansas Supreme Court Administrative Order 2021-PR-100, effective July 1, 2021 (order lifting suspension of more statutory deadlines and time limitations on August 2, 2021, but suspension remains in effect for K.S.A. 2020 Supp. 22-3402). In other words, the State could not have violated Lomon's speedy trial right because any time that normally would have counted toward the State's time limitation occurred while our Supreme Court suspended speedy trial time limitations.

The State asserts a final argument it did not violate Lomon's right to a speedy trial under K.S.A. 2016 Supp. 22-3402 because Lomon was in KDOC custody for other convictions when he filed his motion to dismiss. Lomon was ultimately returned to the Lyon County Jail on February 9, 2021, and pled no contest 84 days later on May 4, 2021. We agree with the State and decline to address this argument further.

The district court retained jurisdiction over Lomon's Lyon County case because Lomon was not protected under the UMDDA once he was released on bond. Lomon did not assert a violation of speedy trial rights outside the UMDDA and, even if he had, any such argument would have failed.

Affirmed.

11